PENN SCHOOL DISTRICT NO. 7 *v.* LEWIS CASS
INTERMEDIATE SCHOOL DISTRICT BOARD
OF EDUCATION

1. QUO WARRANTO—PARTIES ELIGIBLE TO SEEK RELIEF—SPECIAL IN-
TEREST—SCHOOLS AND SCHOOL DISTRICTS.

A private citizen need not demonstrate a special personal interest
in the subject matter to bring a *quo warranto* action to deter-
mine that an election to reorganize a school district was im-
properly and illegally held and was therefore void, and that
the statute providing for the election was unconstitutional (CLS
1961, § 600.4545).

2. SAME—LEAVE TO FILE QUO WARRANTO—APPLICABLE CONSIDERA-
TIONS—APPLICATION TO ATTORNEY GENERAL.

The considerations that should control a court with regard to an
application to bring *quo warranto* are whether an appropriate
application was made to the attorney general, in cases where
required, and whether the application discloses sufficiently ap-

REFERENCES FOR POINTS IN HEADNOTES
[1]  44 Am Jur, Quo Warranto § 74.
[2]  44 Am Jur, Quo Warranto §§ 68, 69.
[3]  44 Am Jur, Quo Warranto § 67.
[4]  44 Am Jur, Quo Warranto § 32.
[5]  44 Am Jur, Quo Warranto §§ 61, 99.
Applicability of statute of limitations or laches **to quo warranto**
proceedings. 26 ALR2d 828.
[6]  44 Am Jur, Quo Warranto § 82 *et seq.*
[7–12] 47 Am Jur, Schools § 19.
[13, 14] 47 Am Jur, Schools § 11.
[15, 19, 21, 27, 28] 47 Am Jur, Schools § 23.
[16] 47 Am Jur, Schools § 79.
[17, 18, 20] 47 Am Jur, Schools § 18 *et seq.*
[22] 47 Am Jur, Schools § 13.
[23] 5 Am Jur 2d, Appeal and Error § 545.
[24] 26 Am Jur 2d, Elections § 243 *et seq.*
[25, 30] 41 Am Jur, Pleading § 6 *et seq.*
[26] 50 Am Jur, Statutes § 223 *et seq.*
[29] 47 Am Jur, Schools § 23.

parent merit to justify further inquiry by *quo warranto* proceedings.

3. SAME—RIGHT OF PRIVATE CITIZEN TO BRING ACTION—APPLICATION TO ATTORNEY GENERAL.

Application by private citizens to bring *quo warranto* proceedings to test the legality of procedures by which their school district was reorganized *held*, not required to be preceded by application to attorney general, and, by virtue of a finding by trial court that their allegations would require trial, established sufficient merit to warrant the granting of leave to bring *quo warranto* proceedings.

4. SCHOOLS AND SCHOOL DISTRICTS—REORGANIZATION OF DISTRICTS —STANDING TO ATTACK REORGANIZATION—QUO WARRANTO PROCEEDINGS.

That individuals may have no right to be located in a particular school district does not mean that they, as private citizens, lack standing to attack the constitutionality of a statute providing for the reorganization of school districts by *quo warranto*, which is the appropriate procedure for the adjudication of such issues.

5. QUO WARRANTO—TIMELINESS OF ACTION—AMENDMENT OF COMPLAINT.

Amendment of a complaint to include a count seeking *quo warranto* relief reorganizing a school district is timely if it is filed within 30 days after the subject election was held, even if the opposing party did not receive notice of it within 30 days after the election, because jurisdiction over the parties has already been acquired (CLS 1961, §§ 600.4545, 600.5856).

6. SAME—JOINDER OF PARTIES—ADDITION OF PARTIES—DISMISSAL.

Failure to join all necessary parties in an action for *quo warranto* relief is not grounds for dismissal of the action, and such parties may be added at any stage of the proceedings.

7. SCHOOLS AND SCHOOL DISTRICTS—CONSTITUTIONAL LAW—DELEGATION OF LEGISLATIVE POWER.

The legislative power to alter school district boundaries may be delegated to subordinate authorities provided that standards are established for the subordinate body.

8. SAME—CONSTITUTIONAL LAW—DELEGATION OF LEGISLATIVE AUTHORITY—PRIVATE PERSONS.

Legislative authority generally may not be delegated to private persons or associations.

9. SAME—CONSTITUTIONAL LAW—DELEGATION OF LEGISLATIVE AU-
THORITY—COMMITTEE CREATED BY STATUTE.

Committees created by statute have legal status, and thus the
legislature may delegate to them the authority to alter school
district boundaries provided that guidelines are furnished.

10. SAME—CONSTITUTIONAL LAW—DELEGATION OF LEGISLATIVE AU-
THORITY—SUFFICIENCY OF STANDARDS.

Requirement of PA 1964, No 289, that State committees must
develop policies, principles, and procedures for statewide school
district reorganization and must set up districts in such a way
that all areas will become part of a district designed to operate
at least 12 grades, that 2 or more districts of the third class or
higher are not to be merged, and that not less than 500 dis-
tricts designed to operate at least 12 grades are created, es-
tablished sufficient standards for the exercise of delegated
authority, and is not an unconstitutional delegation of legis-
lative power (PA 1964, No 289).

11. SAME—CONSTITUTIONAL LAW—DELEGATION OF LEGISLATIVE AU-
THORITY—STANDARDS REQUIRED.

PA 1964, No 289 establishes sufficient standards for the exercise
of authority granted the committees created thereunder, so
as to meet all constitutional tests, even though broad and
general in character (PA 1964, No 289).

12. SAME—CONSTITUTIONAL LAW—DELEGATION OF LEGISLATIVE AU-
THORITY—SELECTION OF SCHOOL OFFICIALS.

The method specified in PA 1964, No 289, § 5 for the selection
of school officials created thereunder, resting within the dis-
cretion of the legislature, does not violate any relevant consti-
tutional provision.

13. SAME—CONSTITUTIONAL LAW—DELEGATION OF LEGISLATIVE AU-
THORITY—POWER OF COMMITTEE TO SELECT ELECTION METHOD.

The granting by PA 1964, No 289 to a local school district reor-
ganization committee of the authority to choose one of two
well-defined election procedures for the purpose of carrying
out the school district reorganization provided by statute is
not an unconstitutional delegation of legislative power (PA
1964, No 289).

14. SAME — CONSTITUTIONAL LAW — DELEGATION OF LEGISLATIVE
POWER — ALTERNATIVE METHODS OF ELECTION.

PA 1964, No 289 providing that a committee set up to effect
reorganization of a school district may choose one of two well

defined methods of conducting an election for approval of its reorganization plan, but also providing that if the first of the two methods is adopted and if the question voted on fails to win majority support, then an election under the second method must be held between 90 days and 6 months later with the result to be final *held*, not unconstitutional (PA 1964, No 289).

15. SAME—CONSTITUTIONAL LAW—DUE PROCESS—DEGREE OF APPROVAL REQUIRED FOR REORGANIZATION.

Equal protection is not denied nor due process violated by a provision for reorganization of a school district upon a majority vote of the electors in the proposed new district even though it might not be desired by the electors of one or more of the included districts (PA 1964, No 289).

16. SAME — CONSTITUTIONAL LAW — EXCEEDING TAX LIMITATION WITHOUT AN ELECTION.

PA 1964, No 289 does not require that a merged school district be subject to a tax limitation increase without an election thereon, and therefore is not subject to constitutional attack on that ground (Const 1963, art 11, § 6; PA 1964, No 289).

17. SAME—CONSTITUTIONAL LAW—DUE PROCESS—PUBLIC HEARINGS.

The alteration of school district boundaries does not constitute a taking or deprivation of property, and therefore it is not necessary that a public hearing be held prior to an election on school district reorganization unless such a hearing is required by statute (PA 1964, No 289).

18. SAME—REORGANIZATION OF DISTRICTS—SUBMISSION OF PLAN BY INTERMEDIATE COMMITTEE.

Action of an intermediate committee set up under statute to effect the reorganization of a school district in submitting 2 alternate reorganization plans to the State committee (one prior to and one after the deadline) does not meet the requirement of the statute that the intermediate committee submit *a* plan within a specified time; so that under the statute the State committee properly formulated its own plan (PA 1964, No 289, § 4[c]).

19. SAME—REORGANIZATION OF DISTRICTS—PLAN SUBMITTED BY STATE COMMITTEE—PUBLIC HEARINGS.

Where a State committee draws its own plan for reorganization, upon failure of intermediate committee to submit timely plan, PA 1964, No 289, § 6 does not require that both plans be submitted to the voters of the district.

20. SAME—REORGANIZATION OF DISTRICTS—REORGANIZATION PLANS—
PUBLIC HEARINGS.

Where State committee prepares reorganization plan on default
of intermediate committee to submit one in time, no public
hearing thereon is required if intermediate committee did con-
duct a hearing on its plan, as required by statute (PA 1964,
No 289, § 6).

21. SAME—REORGANIZATION OF DISTRICTS—ELECTION—WORDING OF
BALLOTS.

Ballots in a school reorganization election which present fully
the question to be voted in each district are properly worded,
and are not defective because they do not contain a descrip-
tion of plan for entire intermediate district (PA 1964, No
289, § 7).

22. SAME—REORGANIZATION OF DISTRICT—RIGHT OF SCHOOL BOARD
TO CONDUCT ELECTION.

The school board of an intermediate school district has the power
to conduct and pay the expenses of an election to approve a
school district reorganization plan (CL 1948, § 340.298a, as
amended by PA 1965, No 52).

23. APPEAL AND ERROR—QUESTIONS NOT BRIEFED BY APPEALING
PARTY.

The Court of Appeals will not discuss or decide questions de-
cided by the trial court but not presented by the appealing
party in its brief.

24. ELECTIONS—SCHOOL DISTRICT REORGANIZATION—AVAILABILITY OF
ABSENTEE BALLOTS.

It is the duty of the secretary of the intermediate board of
education rather than the municipal clerk to make absentee
ballots available in an election to approve a school district re-
organization plan (CLS 1961, § 340.539).

25. PLEADING—SUFFICIENCY TO STATE A CAUSE OF ACTION—NECES-
SITY OF STATING FACTS.

Pleadings that state bare conclusions without specific facts to
support them are not sufficient to state a cause of action.

26. STATUTES—CONSTRUCTION—CONFLICTING STATUTES—LEGISLATIVE
INTENT.

One must look to legislative intent, which must be ascertained by
giving consideration and effect to the enactment as a whole, in
construing statutes whose provisions appear to conflict.

27. Elections—School District Reorganization—Location of Polling Places.

Action of intermediate school board in placing one polling place in an election to reorganize a school district in each district concerned with the reorganization with the exception that one district contained 3 polling places *held*, a proper exercise of discretion and in accordance with law (CLS 1961, § 340.534).

28. Same—School District Reorganization—Procedure—Use of Paper Ballots.

The propriety of the use of paper ballots in a school district reorganization election is not an issue of fact but a question of law, and this alleged irregularity is without merit as a matter of law.

29. Same—School District Reorganization—Notice of Election.

Notices of election and of the polling places issued by school board announcing a district reorganization election *held*, to comply with statutes as a matter of law (CLS 1961, § 340.541 *et seq.* as amended).

30. Pleading—Sufficiency to State Cause of Action—Allegation of Conclusions.

Plaintiff's allegations about an improper transfer of territory from one intermediate school district to another *held*, to allege bare conclusions and thus to be inadequate to state a cause of action.

Appeal from Cass, Byrns (Chester J.), J. Submitted Division 3 January 9, 1968 at Lansing. (Docket No. 3,916.) Decided October 25, 1968.

Complaint by Penn School District No. 7, and certain other school districts similarly situated; and Carlton Hewitt, and other individuals residing in the school districts, against the board of education of Lewis Cass Intermediate School District of Cass County, Michigan, for relief in the nature of *quo warranto*, a determination that a school district reorganization election was void, a determination that Act 289 of the Public Acts of 1964 is unconstitutional and for other relief. Frank J. Kelley, Attor-

ney General of the State of Michigan, intervened on behalf of the people of the State of Michigan. Intervenor's motion for summary judgment granted. Plaintiffs appeal. Affirmed.

*Glassen, Parr, Rhead & McLean,* for plaintiffs.

*Lee Boothby,* for defendant.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Eugene Krasicky* and *James J. Wood,* Assistant Attorneys General, for intervenor.

CANHAM, J.  Plaintiffs are certain school districts within the Lewis Cass intermediate school district of Cass county and certain individual residents of Cass county.  On February 3, 1967, plaintiffs brought action in Cass county circuit court to enjoin the board of education of the Lewis Cass intermediate school district from conducting a school district reorganization election scheduled to be held on February 14, 1967, pursuant to the reorganization of school districts act, PA 1964, No 289 (CL 1948, § 388.681 *et seq.* [Stat Ann 1968 Rev § 15.2299 (1) *et seq.*]).  The complaint alleges that Act 289 is unconstitutional, that certain provisions of the act were not complied with, and that the election procedures were irregular.

On February 7, 1967, the Attorney General intervened in the action.  On the same date a hearing was held on plaintiffs' motion for a temporary injunctive order.  The motion was denied by the trial court and plaintiffs' application for an emergency appeal was denied by this Court February 10, 1967. The election was held as scheduled.  It was conducted in accordance with method 2 of section 7 of

the act[1] and resulted in voter adoption of the reorganization plan in each of the two proposed districts.

Following the election the individual plaintiffs sought and were granted leave to proceed in the nature of *quo warranto* (CLS 1961, § 600.4545 [Stat Ann 1962 Rev § 27A.4545]). Thereupon an amendment to the original complaint was filed, on March 15, 1967, adding a count II seeking *quo warranto* relief. The complaint was subsequently again amended on March 28, 1967.

The amended complaint seeks to have the reorganization election declared void, challenging the constitutionality of act 289, the proceedings conducted thereunder prior to the election, and the regularity of the election itself. Intervenor filed a motion for summary judgment asserting that no material facts were in dispute and that plaintiffs had failed to state a claim upon which relief can be granted. Plaintiffs likewise moved for summary judgment in their favor. On June 5, 1967, following the filing of a written opinion, the trial court entered an order granting intervenor's motion for summary judgment. Plaintiffs appeal, the claim of appeal being timely filed.

In granting summary judgment the trial court held that the plaintiffs, both corporate and individual, were not proper parties to have commenced the original injunctive action or to seek relief by way of *quo warranto*. The court also held that plaintiffs had failed to state a claim upon which relief can be granted with respect to the constitutionality of act 289. As to the balance of plaintiffs' amended complaint, the court rejected some of the allegations as failing to state a claim and ruled that others would require trial if plaintiffs

---

[1] CL 1948, § 388.687 (Stat Ann 1968 Rev § 15.2299[7]).

were held on appeal to be proper parties to raise same.

On appeal, plaintiffs first challenge the ruling of the trial court that they were not proper parties. Inasmuch as the holding of the election has rendered moot the question of injunctive relief, inquiry will be limited to the right of the plaintiffs to proceed by way of *quo warranto.* The trial court ruled that the individual plaintiffs were not proper parties to seek *quo warranto* because they lacked standing; that although they were resident taxpayers and electors of the school districts affected by the reorganization, they lacked a sufficient special interest to challenge the constitutionality of act 289 or the reorganization proceedings.

In support of the trial court's holding that plaintiffs must demonstrate a special interest in order to seek *quo warranto,* the intervenor cites the cases of *Vrooman* v. *Michie* (1888), 69 Mich 42; *Cain* v. *Brown* (1897), 111 Mich 657; *Boucha* v. *Alger Circuit Judge* (1910), 159 Mich 610; and *Marian* v. *Beard* (1932), 259 Mich 183. Such cases, dealing with the right to bring *quo warranto* as a vehicle for trying title to office, have no application to *quo warranto* actions instituted pursuant to CLS 1961, § 600.4545, *supra.* In discussing the question of standing to bring *quo warranto,* it is noted in 4 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 237, that *quo warranto* actions under the above statute may be brought "by *any citizen* of the county by special leave of the court or a judge thereof," and that it is not necessary for the private citizen to make prior application to the Attorney General or county prosecuting attorney. The authors conclude, and this Court finds no reason to disagree, that a private citizen may bring a *quo warranto* action of the nature presented in this case,

without any showing of a special personal interest in the subject matter at hand. The requirement that leave be first obtained does not require a contrary conclusion. With regard to an application for leave to bring *quo warranto,* the controlling considerations should be "whether an appropriate application was made to the Attorney General, in cases where required, and whether the application discloses sufficient apparent merit to justify further inquiry by *quo warranto* proceedings." 4 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 237.

The present action clearly meets the above test. As previously noted, it is not required that proceedings under CLS 1961, § 600.4545, *supra,* be preceded by an application to the Attorney General or county prosecutor. See GCR 1963, 715.2(2). As to apparent merit, the trial court found that certain of plaintiffs' allegations would require trial if they were proper parties to bring the action, thereby establishing sufficient merit to warrant granting leave to bring *quo warranto.* It is concluded that the trial court erred in granting summary judgment on the basis of lack of sufficient special interest on the part of the individual plaintiffs. In view of this conclusion, and because the corporate (school district) plaintiffs did not join in seeking *quo warranto* relief, the question of their right to do so need not be considered.

The parties address themselves to other questions relating to the plaintiffs' right to maintain *quo warranto* proceedings. It is argued that individuals have no right to be located in a particular school district and that therefore plaintiffs lack standing to attack a statute providing for the reorganization of school districts. We do not read the cases cited in support of this contention as denying plaintiffs the opportunity, in an appropriate proceeding, to challenge the constitutionality of the act in ques-

tion or to challenge whether its provisions, leading to the reorganization election, were complied with. Moreover, *quo warranto* is the appropriate proceeding for adjudication of such issues. *Grand Rapids City Clerk* v. *Judge of Superior Court* (1962), 366 Mich 335; *Holland City Clerk* v. *Ottawa Circuit Judge* (1962), 368 Mich 479.

It is also argued that the *quo warranto* action was not timely commenced. The statute, CLS 1961, § 600.4545, *supra,* mandates that a *quo warranto* action "shall be brought within 30 days after [the] election." Within the 30 day period plaintiffs sought and were granted leave to bring *quo warranto* and filed an amendment to the original complaint adding a count seeking *quo warranto* relief. The intervenor received a copy of the amended complaint, served by mailing (GCR 1963, 107.3), on the 31st day after the election and argues that CLS 1961, § 600.5856 (Stat Ann 1962 Rev § 27A.5856), relating to tolling of statutes of limitation, was not complied with prior to the expiration of the 30 day period. However where, as here, *quo warranto* is sought in a pending action, there is no need for additional service of process upon parties already subject to the court's jurisdiction. 4 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 25. Jurisdiction over the parties previously having been acquired, and the amended complaint for *quo warranto* having been filed within 30 days after the election, the *quo warranto* action was timely brought.

Finally, it is claimed that all of the necessary parties have not been made defendants in this action and that they cannot be added after the expiration of the 30 day period. The action was properly commenced against the board of education of the Lewis Cass intermediate school district. Failure to join other necessary parties is not grounds for dismissal

of the action and such parties may be added at any stage. *DeYoung* v. *Township of Banks* (1945), 312 Mich 217; *Smith* v. *Township of Norton* (1947), 319 Mich 365; GCR 1963, 207.

We conclude that the *quo warranto* proceedings were timely and properly commenced and not subject to dismissal on any of the grounds asserted. Because of the possibility of such a result on appeal, the trial court also considered whether the amended complaint stated a claim upon which relief can be granted with respect to the alleged unconstitutionality of PA 1964, No 289. The trial court ruled that the act was constitutional; plaintiffs seek review of that determination by raising the following questions:

*Does PA 1964, No 289 improperly delegate legislative authority to the state committee and the intermediate committees?*

Plaintiffs contend that Act 289 is constitutionally invalid because: (1) it delegates legislative authority, (2) to committees having no legal status, (3) without sufficient standards for the exercise of the authority granted.

(1) The legislative power to alter school district boundaries may be delegated to subordinate authorities provided that standards are established for the guidance of the subordinate body. *Board of Education of Presque Isle Township School District No. 8* v. *Presque Isle County Board of Education* (1961), 364 Mich 605; *School District of the City of Lansing* v. *State Board of Education* (1962), 367 Mich 591. In 47 Am Jur, Schools, § 18, pp 310–11, it is said:

"Whatever the nature of the change, it is settled that the boundaries of school districts may be changed at the will of the legislature. In the exercise of its power, the legislature may act directly,

or it may delegate its power to subordinate authorities without violating the general rule against the delegation of legislative power. For example, the power to change boundaries may be conferred by the legislature on administrative agencies, cities or towns, local boards or officers, including town boards, or county boards or officers, or upon a state superintendent of schools."

See, also, 16 CJS, Constitutional Law, §§ 138(b) (23) and 140(e).

(2) Plaintiffs argue that the committees designated in act 289 are not commissions or boards, and possess no status other than that of a group of individuals organized as a committee. It is generally true that legislative authority may not be delegated to private persons or associations. 16 Am Jur 2d, Constitutional Law, § 249; 16 CJS, Constitutional Law, § 137. Act 289 does not violate that prohibition, however. Having been created by statute the committees are not lacking in legal status. Their statutory denomination as committees rather than as boards or commissions is of no significance. See *Huron-Clinton Metropolitan Authority* v. *Boards of Supervisors of Five Counties* (1942), 300 Mich 1, 22, quoting from *Beach* v. *Leahy,* 11 Kan 23, in part as follows:

" 'The mere fact that these organizations are declared in the statute to be bodies corporate, has little weight. We look behind the name to the thing named. Its character, its relations, and its functions determine its position, and not the mere title under which it passes.' "

(3) In attacking the sufficiency of standards for the exercise of delegated authority, plaintiffs point to the provision in subsection 4a of act 289, requiring the state committee to "develop policies, prin-

ciples and procedures for a statewide school district reorganization program." This, it is argued, permits the committee to prescribe its own standards. Yet subsection 4a also provides that the program developed by the committee must effectuate several specified objections; *i.e.,* that all areas are to become part of a district operating or designed to operate at least 12 grades; that two or more districts of the third class or higher may not be merged; and that not less than 500 districts operating 12 grades may be created. Read as a whole, subsection 4a merely grants to the state committee authority to implement specific goals promulgated by the legislature and as such does not constitute an abdication of the legislative function.

"A legislative body may, after declaring a policy and fixing a primary standard, confer upon executive or administrative officers the 'power to fill up the details' by prescribing administrative rules and regulations to promote the purpose and spirit of the legislation and to carry it into effect; and the action of the legislature in giving such rules and regulations the force and effect of laws does not violate the constitutional inhibition against delegating the legislative function." Annotation, Permissible limits of delegation of legislative power, 79 L Ed 474, 489, 490.

Plaintiffs also place particular emphasis on section 7 of act 289 which establishes two election methods without, it is argued, standards for selecting between the two methods. Inasmuch as plaintiffs also raise this issue as a separate question in their brief, it will be so considered *infra.*

In rejecting the contention that the legislature did not establish sufficient standards for the exercise of authority granted the committees, the trial court

enumerated many of the guidelines contained in act 289, as follows:

"Act 289 establishes the purposes, limitations and goals within which the state and intermediate committees are to work. For example, it prescribes and limits the districts and their classifications to be created; it requires reports to the legislature; it provides the manner of public election and the qualifications of voters; it sets the duties of the state and intermediate committees; it sets the standards for the selection and appointments of state and intermediate committees; it provides for the keeping of records; it provides for the board of the enlarged district; it provides for disposition of the books, records, funds and properties of the districts which lose their identities; it provides for the apportionment of state aid; and it prescribes the powers and duties of the superintendent of public instruction."

These guidelines compare favorably with those held sufficient in *School District of the City of Lansing* v. *State Board of Education, supra,* p 598, wherein it was said:

"It should be apparent that while the legislature may not have taken care of every conceivable possibility in delegating this administrative function to its agent, it has set up sufficient standards for the guidance of the administrative body so as to meet all constitutional tests."

It is generally recognized that in the delegation of administrative authority the legislature may establish standards of a broad and general character. The reason is aptly explained in the Annotation, Permissible limits of delegation of legislative power, *supra,* p 488:

"If the legislature were required to specify minutely and in detail the course to be pursued by the

administrative agency and the acts which it might perform in the execution of the law, there would be little or no advantage gained by delegating even the administrative details. If the legislature were held to such strict requirements, it would in many instances be wholly impotent to provide workable legislation on a subject admittedly within the scope of its regulatory powers. As pointed out by the Supreme Court [*Mutual Film Corp.* v. *Industrial Commission* (1915), 236 US 230 (35 S Ct 387, 59 L Ed 552)], too much effort to detail and particularize, so as to dispense with the administrative or fact-finding assistance, would cause great confusion in the laws, and would result in laws deficient in both provision and execution."

*Is the method of selection of the committees unconstitutional?*

Plaintiffs concede that the method specified in PA 1964, No 289, § 2, for selection of the state committee is not constitutionally objectionable if the legislature has the authority to create the committee. They contend, however, that the method specified in section 5 of Act 289 for selection of members of the intermediate committees is, as a matter of law, invalid.

The members of an intermediate committee are selected in the following manner. Three members are appointed, from its membership, by the intermediate board of education. Five members are elected, from their combined number, by the members of the boards of education of all school districts operating a program of 12 or more grades, unless there are no such districts within the intermediate district. Five members are elected, from their combined number, by the members of the boards of education of all school districts operating a program of less than 12 grades, unless there are no such districts within the intermediate district. Finally,

five members are appointed, from among the registered resident electors of the intermediate district, by the probate judge or by the probate judges acting jointly where there are two or more.

In attacking the provisions of section 5 the plaintiffs' brief argues, in representative part:

"This method of selection does not meet with any of the standards of approved methods of selecting administrative agencies, has no recognition in any known pattern, and does not give rise to a duly constituted administrative agency. The scheme employed is novel and does not meet with any judicial approval and on the contrary affronts logic."

The argument is unimpressive. Limited only by such constitutional provisions as are relevant (of which there is none cited), the manner of selection of school officials rests entirely within the discretion of the legislature. A leading case is *Minsinger* v. *Rau* (1912), 236 Pa 327, 331 (84 A 902), wherein it was held:

"The establishment, maintenance, and support of a system of common schools having been imposed upon the legislative department of the government, it must employ agencies to accomplish that object, and the manner of their selection is peculiarly within its discretion. * * * Subject to constitutional restrictions, the state may provide any method for the selection of its agents it may see fit, and the methods employed need not be alike in all instances."

The same point was earlier and more succinctly made in *Belles* v. *Burr* (1889), 76 Mich 1, 11:

"The authority granted by the Constitution[2] to the Legislature to establish a common or primary school system carried with it the authority to pre-

---

[2] Const 1850, art 13, § 4. See, currently, Const 1963, art 8, § 2.

scribe what officers should be chosen to conduct the affairs of the school-districts, to define their powers and duties, their term of office, and how and by whom they should be chosen."

See, generally, 47 Am Jur, Schools, § 30, and 78 CJS, Schools and School Districts, §§ 84, 107. Insofar as it is relevant to this issue, *Sailors v. Kent Board of Education* (1967), 387 US 105 (87 S Ct 1549, 18 L Ed 2d 650), is supportive of the method of selection devised by the legislature in section 5.

*Is the establishment of two methods of voting and leaving the selection thereof to the intermediate committee an unconstitutional delegation of legislative power?*

Section 7 of act 289 provides for elections. Two election methods are prescribed and the intermediate committee is to determine, subject to certain restrictions, which method shall be used. Under method 1 the entire area encompassed by the intermediate district plan votes as a unit on the question of adoption of the intermediate district reorganization plan for that proposed district; if a majority of the qualified electors voting in a proposed district approve the plan for that proposed district it is declared adopted.

The act has prescribed two election methods, both complete in themselves, and has empowered the intermediate committee to decide, subject to certain limitations, which method shall be employed. The granting to a board or commission the authority to choose one of two well-defined methods of accomplishing the purpose of a legislative act is not constitutionally objectionable. In *State, ex rel. Richards, v. Moorer* (1929), 152 SC 455 (150 SE 269), the court had under consideration a statute which permitted the highway commission to choose between two alternate plans for financing highway

construction. In holding that the option given the commission did not amount to an unconstitutional delegation of legislative power, the court said, p 484:

"The basic subject-matter of the act is the completion of the construction of the state highway system, and the two alternative plans of financing the work, each complete in itself, are merely parts of that subject. The authority conferred upon the commission, in the option given it to select either of the plans, is an authority or discretion as to the execution of the law, being merely a choice of method of procedure for carrying out the purpose of the act, and is nothing more than provision for efficient execution and administration of a finished statute. This power is similar in principle to that which, we have seen, has often been delegated to public officials or boards with the approval of the courts."

To the same effect is *Codman* v. *Crocker* (1909), 203 Mass 146, 154, 155 (89 NE 177, 180, 25 LRA NS 980):

"Objection is made to the action of the commission on the ground that the statute involves an unconstitutional delegation of legislative authority. But the Legislature determined that a railway for the same general service might be constructed by either of two routes to either of two termini, and left to this commission the question of administration as to which of the two modes of building this great public work would be the better. This is a delegation only of such powers as often have been left to boards of public officers with the approval of this and other courts." (Citations omitted.)

Other cases affirming delegation by the legislature of authority to select between more than one statutorily-defined method of accomplishing the legislative purpose include *State, ex rel. Crumpton,* v.

*Montgomery* (1912), 177 Ala 212 (59 So 294, 298);
*Evans* v. *Hurlburt* (1926), 117 Or 274 (243 P 553,
554); and *Opinion to the Senate* (1954), 81 RI 254
(102 A2d 118).

PA 1964, No 289, § 7, further provides that if
election method number 1 is adopted by the inter-
mediate committee and if the question voted on fails
to obtain an affirmative majority, then another
election using method number 2 must be held not
less than 90 days nor more than six months there-
after, the results of which shall be final. Plaintiffs
argue that requiring a second vote in such a circum-
stance is unconstitutional. No reason suggests it-
self why this should be so, and plaintiffs cite no
authority for their position. The fact that a pro-
posal to create or alter a school district has been
submitted to a vote and defeated has uniformly been
held not to preclude its creation or alteration pur-
suant to a vote taken at a subsequent election so
long as statutory time limits between such elections
are complied with. 78 CJS, Schools and School Dis-
tricts, § 41, at 720.

*Does the provision for reorganization upon ap-
proval of a majority of all electors in a proposed
new district violate due process and deny equal
protection?*

The cases of *Wheeler School District No. 152 of
Grant County* v. *Hawley* (1943), 18 Wash 2d 37 (137
P2d 1010); and *Hazlet* v. *Gaunt* (1952), 126 Colo 385
(250 P2d 188), are closely on point and hold that in
the absence of an express constitutional restriction,
the legislature may provide for reorganization of
school districts upon majority vote of all the electors
in a proposed new district even though it might
not be desired by the electors of one or more of
the included districts. See, also, *Fractional School
District No. 1, Barry Twp.* v. *Township School Dis-*

*trict of Barry Twp.* (1932), 259 Mich 75, and *Fulton Township School District, Gratiot County* v. *School District No. 4 Fractional, Essex Township, Clinton County* (1942), 302 Mich 566, holding, contrary to plaintiffs' contention, that a school district may be compelled to become consolidated without its consent.

*Is it a violation of Article IX, Section 6 of the 1963 Constitution to subject the merged districts to a tax limitation increase without an election thereon?*

The Attorney General has ruled that the territory of school districts attached pursuant to the provisions of act 289 to a school district in which a tax limitation increase for operating purposes is in effect is subject to such tax limitation increase even though the qualified school electors of the territory so attached have not voted on the question of an increase in the tax limitation. OAG 1965–66, No 4458, p 167. Plaintiffs contend that this would violate Constitution (1963), art 9, § 6, which limits the total amount of general *ad valorem* property taxes in any one year to 15 mills except where a tax limitation increase is approved by the qualified voters of the territory affected. The question is an interesting one but need not be answered in the context of this *quo warranto* proceeding. Nothing in act 289 itself requires that a merged district be subject to a tax limitation increase without an election thereon. Thus even if plaintiffs' contention, that to do so would violate Article XI, Section 6, is correct, it would not affect the constitutionality of act 289 nor the validity of a reorganization undertaken pursuant thereto.

*Is submission of a school district reorganization plan to the voters without a public hearing thereon unconstitutional?*

The intermediate committee held a public hearing on December 1, 1965, prior to submitting two plans to the state committee. The reorganization plan which was eventually submitted to the voters, however, was one formulated by the state committee. No public hearing was held on this plan. Plaintiffs contend that due process requires notice and an opportunity to be heard and therefore if (as the trial court ruled) act 289 does not require a second public hearing on the plan formulated by the state committee, the act is unconstitutional. The contention is without merit. The alteration of school district boundaries does not constitute a taking of property nor does it deprive any person of his property within the meaning of the constitutional guarantee relied upon. Consequently it has been often held that statutes authorizing officers or boards to create or alter school districts are not invalid for failure to require notice and hearing, and that notice and hearing are not essential where not required by statute. See, for example, *Antelope Valley Union High School District* v. *McClellan* (1921), 55 Cal App 244 (203 P 147); *Prosper Independent School District* v. *County School Trustees* (Tex Com App, 1933), 58 SW2d 5; *School District No. 3* v. *Callahan* (1941), 237 Wis 560 (297 NW 407, 135 ALR 1081); *Marathon Oil Company* v. *Welch* (Wyo, 1963), 379 P2d 832; and 78 CJS, Schools and School Districts, §§ 38, 42.

We conclude, as did the trial court, that plaintiffs have failed to state a claim upon which relief can be granted with respect to the alleged unconstitutionality of Act 289.

The balance of plaintiffs' amended complaint alleged, in numerous particulars, that the procedures employed in formulating the reorganization plan and in conducting the election were invalid. The

trial court granted summary judgment with respect
to some of the allegations and held that others pre-
sented disputed issues of fact requiring trial. We
agree with the trial court's resolution of the follow-
ing alleged irregularities:

*Lack of authority of the state committee to formu-
late the reorganization plan.* Section 6 of act 289 re-
quires the intermediate committee to submit a dis-
trict reorganization plan to the state committee
within nine months after receiving a manual of pro-
cedure from the state committee. It is undisputed
that the manual was received by the intermediate
committee on March 31, 1965, and that being unable
to agree upon a single plan the intermediate com-
mittee submitted two different plans to the state
committee on December 6, 1965. Later, on Febru-
ary 17, 1966, the intermediate committee submitted
another reorganization plan but the nine-month
deadline had by then expired. Thereafter, the state
committee resolved that the intermediate committee
had failed to timely perform the duties required of
it under section 6 and formulated its own reorgan-
ization plan for the district. Under section 4(c)
of the act, the state committee is authorized to per-
form any or all duties of the intermediate committee
not performed by the latter.

The trial court ruled that the intermediate com-
mittee had failed, within the required nine-month
period, to submit *a* (interpreted to mean one) re-
organization plan and that therefore it lacked
authority to proceed further in the matter. It seems
clear enough from both the language and purpose
of section 6 that submission of two separate and
different plans for reorganization of a district does
not constitute compliance therewith. This being so,
the intermediate committee was without authority,
after the expiration of the nine-month period, to

submit additional plans and the state committee was correct in formulating a reorganization plan for the district pursuant to section 4(c).

*Submission to the voters of the state committee plan only.* Under certain circumstances section 6 of the act requires that both a state committee plan and an intermediate committee plan be submitted to the voters of the district in a run-off election, with the plan receiving the most votes then being submitted for approval or rejection at a second election. Plaintiffs contend that the above procedure should have been employed in the instant case; that submission to the voters of the plan formulated by the state committee only violated the requirements of section 6.

The portion of section 6 relied on provides that if the intermediate committee submits a plan within the required nine-month period which is rejected by the state committee and if the intermediate committee then submits a revised plan which is likewise rejected by the state committee, the state committee shall thereupon prepare a reorganization plan to be submitted to the electorate together with the revised plan of the intermediate committee. However, the state committee prepared the plan in this case by reason of the authority vested in it under section 4(c), upon the failure of the intermediate committee to submit a proper plan within the nine-month period, rather than by reason of the provisions of section 6 relied upon by plaintiffs. Inasmuch as no valid plan was submitted by the intermediate committee, no run-off election was required in this instance.

*Failure to conduct a public hearing on the state committee plan.* Plaintiffs further contend that if the state committee had the authority to prepare the reorganization plan it likewise had the duty to

conduct a public hearing on that plan. Both due process and Act 289, it is argued, require a public hearing on the plan prior to the election. The due process argument has already been considered. As to Act 289, the only section requiring public hearings is section 6, and it requires only one such hearing, to be conducted by the intermediate committee prior to submitting its plan to the state committee. It is undisputed that the intermediate committee did conduct a public hearing on December 1, 1965, and that notice of such hearing was given in accordance with the requirements of section 6 relating thereto. The state committee was required, under section 4(c), to perform only those functions not performed by the intermediate committee. Section 6 permits, but does not require, more than one public hearing, and such a hearing was held in this case. The fact that a reorganization plan is modified subsequent to the initial public hearing does not, of itself, require a second public hearing if the statute does not so require. *State, ex rel. School District No. 56,* v. *Schmiesing* (1954), 243 Minn 11 (66 NW 2d 20), and *Juhl* v. *Well* (ND, 1962), 116 NW2d 625.

*The wording of the ballots.* Plaintiffs allege that the ballots were not properly worded, in that they did not contain a description of the reorganization plan for the entire intermediate district, and that for this reason the plan to be voted upon was not readily understandable to the electorate. Plaintiffs misunderstand what it is the voters are called upon to approve in a method 2 election. Under the method 2 election procedure, as set forth in section 7, each proposed district within the intermediate district votes on the question of adoption of the reorganization as it relates to that proposed district, rather than (as is the case under method 1) on the ques-

tion of adoption of the reorganization plan for the entire intermediate district. The ballots used in each of the two proposed districts are quoted in the second amendment to plaintiffs' complaint; they fully present the question to be voted upon in each district, in compliance with the provisions of section 7 relating to the wording of ballots in method 2 elections.

*Authority of the defendant board of education to conduct the election and to pay the expenses thereof.* Plaintiffs allege that the defendant lacked authority to conduct the reorganization election and to assume the cost thereof. The last paragraph of section 7 of act 289 provides as follows:

"The board of education of the intermediate school district shall conduct the election or elections provided for in this section according to the general election laws and according to chapters 7 and 8 of part 2 of the school code."

In addition, CL 1948, § 340.298a as amended by PA 1965, No 52 (Stat Ann 1968 Rev § 15.3298[1]), describes the powers and duties of an intermediate board of education and specifically empowers such boards to pay the expenses of "elections conducted by the board [and] expenses incurred by the board in the legal performance of its duties." The above statutory provisions are dispositive of plaintiffs' contentions.

*Lack of an election in the Marcellus and Edwardsburg school districts.* Plaintiffs' complaint also questioned the validity of the reorganization election on the ground that the residents of the Marcellus and Edwardsburg school districts did not vote on the question of its approval. The trial court held that while it was true that the two districts did not vote in the election, this did not present a meritorious

challenge to the validity of the election because the districts in question were not affected or changed by the reorganization plan. See section 7 of the act, which provides in part as follows:

"If the intermediate district plan provides that the boundaries of an existing school district shall remain the same such district shall not participate in an election held under either method number 1 or method number 2."

Plaintiffs' brief on appeal does not challenge the applicability or validity of the above provision and therefore the matter need not be further discussed. *Mitcham* v. *City of Detroit* (1959), 355 Mich 182, 203.

*Availability of absentee ballots.* Plaintiffs' complaint further alleged that "absentee voter ballots are not available for said election at the office of the municipal clerks as required by law under the school code and the Michigan election law." No further elaboration is provided; apparently plaintiffs have reference to the provisions of the Michigan election law relating to the handling of requests for absentee ballots by the city, township or village clerk, as the case may be (CL 1948, § 168.758 *et seq.* as amended by PA 1965, No 355 [Stat Ann 1968 Cum Supp § 6.1758 *et seq.*]). However, section 7 of Act 289 states that the reorganization election is to be conducted "according to the general election laws and according to chapters 7 and 8 of part 2 of the school code," and section 539 of chapter 8 of part 2 of the school code specifies that:

"Where the provisions of the Michigan election law are applicable under the provisions of this chapter, the secretary of the board of the school district operating under this chapter shall perform the duties prescribed for a township, village or city

clerk in the Michigan election law." CLS 1961, § 340.539 (Stat Ann 1968 Rev § 15.3539).

Thus it is the duty of the secretary of the intermediate board of education to make absentee ballots available, rather than the clerks of the various municipalities as plaintiffs contend. Plaintiffs make no claim that absentee ballots were not made available by the secretary of the defendant board of education or that any voter was denied an absentee ballot.

We conclude that the foregoing allegations of invalidity are based on erroneous legal contentions, that there exists with respect to these allegations no genuine issue of material fact, and that therefore the motion for summary judgment was properly granted.

In the opinion of the trial court granting the summary judgment, the court indicated that except for the determination made, certain issues presented would require trial. The portion of the trial court's opinion dealing with the latter group of questions reads as follows:

"Plaintiffs make certain allegations in their pleadings which raise issues on which, if appellate authority disagrees with our findings and opinion and returns the cause to the trial court, will require trial. These allegations include:

"1. Did the plan as submitted comply with the guidelines?

"2. Were the polling precincts for the February 14, 1967, election properly located?

"3. Was the use of paper ballots improper in certain precincts?

"4. Were proper notices of the election and of the polling places had?

"5. Was there an improper transfer of jurisdictional authority within the defendant district and within another county?

"Intervenor may prepare an order for summary judgment in conformance with this opinion."

Plaintiffs' brief on appeal does not, of course, take issue with this part of the court's opinion. Indeed, aside from one paragraph of their brief on the "guidelines" question, plaintiffs do not discuss with any degree of specificity any of the above matters.

On the other hand, the intervenor's brief takes issue with the trial court and contends that summary judgment should have been granted as to the remaining issues as well. The brief of the intervenor discusses each of the issues, arguing that they present questions of law rather than fact and should be disposed of on appeal rather than by further proceedings in the trial court. We agree with the position of the intervenor.

On the issue of whether the plan submitted complied with the guidelines plaintiffs have pleaded bare conclusions. For lack of specificities, plaintiffs fail to state a cause of action.

The propriety of the location of the polling precincts is not one which turns on fact but rather law. The last paragraph of section 7 of the reorganization act reads as follows:

"The board of education of the intermediate school district shall conduct the election or elections provided for in this section according to the general election laws and according to chapters 7 and 8 of part 2 of the school code."

Examination of the general election law and chapters 7 and 8 of the school code reveals conflict with respect to many procedural requirements. Consequently, we must determine what part of each statute is to be followed. In making this determination we must look to legislative intent which must

be ascertained by giving consideration and effect to the enactment as a whole. See *People* v. *Babcock* (1955), 343 Mich 671; *State Highway Commissioner* v. *Detroit City Controller* (1951), 331 Mich 337.

The intermediate board established that there would be one precinct and one polling place in each district except Dowagiac Union where there were three precincts and three polling places. This was done in accordance with section 534 of chapter 8 of part II of the school code, being CLS 1961, § 340.534 (Stat Ann 1968 Rev § 15.3534), which provides in part as follows:

"The board of any registration school district shall form the district into one or more voting precincts *as it shall deem expedient.*" (Emphasis supplied.)

It was the opinion of the board of education of the intermediate school district that conducting this election using the described organization would be the most expedient method in accordance with the quoted section.

We find that the polling places were established in accordance with law and that section 654[3] of the Michigan election law was not intended to be applicable in a reorganization election.

The propriety of the use of paper ballots is not an issue of fact but a question of law. Section 656 of the Michigan election law, CLS 1961, § 168.656 (Stat Ann 1956 Rev § 6.1656), prohibiting their use in precincts where there are over 800 voters is not applicable. This alleged irregularity is without merit as a matter of law.

Notices of the election and of the polling places are contained in exhibit C to defendant's answer. As a matter of law, they comply fully with all applicable statutes. The applicable rules of law are con-

---

[3] CLS 1961, § 168.654 (Stat Ann 1956 Rev § 6.1654).

tained in part 2, chapter 8 of the school code, CLS 1961, § 340.531 *et seq.,* as amended (Stat Ann 1968 Rev § 15.3531 *et seq.*).

Plaintiffs' allegations about an improper transfer of territory from one intermediate reorganization committee to another allege a bare conclusion and do not adequately state a cause of action.

The trial court properly granted summary judgment in this cause. Our finding that the issues which the trial court deemed issues of fact are issues of law alleviates the necessity for further trial in this cause.

Affirmed. No costs, a public question being involved.

LESINSKI, C. J., and McGREGOR, J., concurred.