# Order

Michigan Supreme Court
Lansing, Michigan

Robert P. Young, Jr.,
Chief Justice

Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra,
Justices

April 16, 2012

144084 & (18)

ROBERT DAVIS,
Appellant,

v

EMERGENCY MANAGER FOR THE
DETROIT PUBLIC SCHOOLS,
Appellee.

_____/

SC: 144084
COA: 306165

On March 8, 2012, the Court heard oral argument on the application for leave to appeal the October 6, 2011 order of the Court of Appeals. On order of the Court, the application is again considered and, pursuant to MCR 7.302(H)(1), we VACATE that part of the Court of Appeals October 6, 2011 order providing the legal reasoning for the denial of the application. In all other respects, the application for leave to appeal is DENIED as moot in light of the fact that Roy S. Roberts was reappointed to serve as Emergency Manager for the Detroit Public Schools, effective April 2, 2012, and he signed an Oath of Office on that date.

YOUNG, C.J. (*concurring*).

I concur in the Court's order denying leave to appeal because the Governor's reappointment of Roy Roberts to the office of Emergency Manager for the Detroit Public Schools has rendered this proceeding moot.

## I. FACTS AND PROCEDURAL HISTORY

On May 4, 2011, the Governor appointed Roberts Emergency Manager for the Detroit Public Schools pursuant to MCL 141.1501 *et seq.* Roberts signed a contract agreeing to serve as emergency manager from May 16, 2011, until May 16, 2012. Roberts did not take the oath of office before he began his duties as emergency manager.

On August 11, 2011, Robert Davis submitted an application to the Attorney General, pursuant to MCR 3.306(B)(3)(a), requesting that the Attorney General institute a quo warranto action against Roberts because Roberts had failed to take the oath of office

before commencing his duties. Davis alleges that article 11, § 1 of the 1963 Michigan Constitution required Roberts to take the oath of office before he commenced his duties as emergency manager[1] and that his failure to timely take the oath rendered the office vacant pursuant to MCL 201.3(7).[2] Davis alternatively claims that Roberts's failure to file an oath within 60 days of his appointment rendered his original appointment a nullity pursuant to MCL 15.93.[3] Roberts took the oath of office on August 30, 2011. On September 6, 2011, the Attorney General declined Davis's request to initiate a quo warranto action.

Davis then filed an ex parte application for leave to file a complaint for a writ of quo warranto in the Court of Appeals pursuant to MCR 3.306(B)(3)(b). The Court of Appeals denied the application, holding that Davis had failed to demonstrate sufficient apparent merit to justify inquiry by quo warranto. The Court of Appeals reasoned that Roberts's failure to take the oath immediately did not violate MCL 201.3(7), Roberts had remedied his omission by taking the oath of office in August 2011, and Roberts was a de facto officer before he took the oath of office.

Davis filed an application for leave to appeal the decision of the Court of Appeals. We ordered oral argument on the application[4] and heard arguments on March 8, 2012.

While the case was pending before this Court, the Governor reappointed Roberts to the office of Emergency Manager for the Detroit Public Schools on March 30, 2012.

---

[1] Article 11, § 1 of the 1963 Michigan Constitution provides:

All officers, legislative, executive and judicial, before entering upon the duties of their respective offices, shall take and subscribe the following oath or affirmation . . . .

[2] MCL 201.3 provides:

> Every office shall become vacant, on the happening of any of the following events, before the expiration of the term of such office:

$$* \quad * \quad *$$

7. His refusal or neglect to take his oath of office, or to give, or renew any official bond, or to deposit such oath, or bond, in the manner and within the time prescribed by law.

[3] MCL 15.93 provides:

> Every such officer, except where otherwise directed by law, shall file his oath of office and certificate or bond aforesaid, as the case may be, within 60 days from the receiving of his commission or appointment; and in default thereof, such commission or appointment shall be null and void . . . .

[4] Davis v Emergency Manager for the Detroit Pub Sch, 490 Mich 966 (2011).

2

The reappointment became effective April 2, 2012. On April 2, 2012, Roberts took the oath of office and filed a certified copy of his oath with the Secretary of State.

The Governor's reappointment of Roberts raises two questions: whether the Governor had the authority to reappoint Roberts and, if so, what effect such reappointment has on this proceeding.

## II. THE GOVERNOR'S AUTHORITY TO REAPPOINT THE EMERGENCY MANAGER

MCL 141.1515(4) establishes the Governor's authority to appoint an emergency manager:

> Upon the confirmation of a finding of a financial emergency, the governor shall declare the local government in receivership and shall appoint an emergency manager to act for and in the place and stead of the governing body and the office of chief administrative officer of the local government.

MCL 141.1515(5)(d) discusses removal of an emergency manager and allows the Governor to fill a vacancy in the office of emergency manager:

> Except as otherwise provided in this subdivision, *the emergency manager shall serve at the pleasure of the governor*. An emergency manager is subject to impeachment and conviction by the legislature as if he or she were a civil officer under section 7 of article XI of the state constitution of 1963. *A vacancy in the office of emergency manager shall be filled in the same manner as the original appointment*.[5]

MCL 141.1515(8) further elaborates on removal and the Governor's duty to appoint a new emergency manager within 30 days of removal:

> The emergency manager shall continue in the capacity of an emergency manager as follows:
>
> (a) Until removed by the governor or the legislature as provided in subsection (5)(d). If an emergency manager is removed pursuant to this subdivision, the governor shall within 30 days of the removal appoint a new emergency manager.
>
> (b) Until the financial emergency is rectified.

As indicated above, Davis claims that Roberts is an officer within the meaning of article 11, § 1 of the Constitution and that Roberts's failure to take the oath of office before commencing his duties rendered vacant the office of Emergency Manager for the

---

[5] Emphasis added.

3

Detroit Public Schools pursuant to MCL 201.3(7). Davis alternatively claims that Roberts's failure to file an oath within 60 days of his appointment rendered his original appointment a nullity pursuant to MCL 15.93. If either of these assertions is true,[6] then the office of Emergency Manager for the Detroit Public Schools was legally vacant no later than July 16, 2011. MCL 141.1515(5)(d) gives the Governor the authority to fill vacancies in the office of emergency manager by appointment. Thus, if the office was vacant as Davis claims, the Governor was authorized to fill the vacancy by reappointing Roberts. If Davis's assertions are incorrect, then the Governor's reappointment of Roberts was merely a precautionary exercise of the Governor's authority under MCL

---

[6] I am not convinced that a person who serves as an emergency manager is an "officer" within the meaning of article 11, § 1 of the 1963 Michigan Constitution. Article 11, § 1 of the 1963 Michigan Constitution provides:

> All officers, legislative, executive and judicial, before entering upon the duties of their respective offices, shall take and subscribe the following oath or affirmation . . . .

Neither party, apparently, was aware that nearly a century and a half ago, this Court interpreted the term "officer" as it appeared in the predecessor of article 11, § 1 of the 1963 Constitution. In *Underwood v McDuffee*, 15 Mich 361 (1867), this Court interpreted article 18, § 1 of the 1850 Constitution, which was a predecessor of article 11, § 1 of the 1963 Constitution. Of relevance to this case, the Court stated:

> The term "officer," as there used, can only be taken to refer to such offices as have some degree of permanence, and are not created by a temporary nomination for a single and transient purpose. [*Underwood*, 15 Mich at 366.]

We reiterated the permanence requirement in *Shurbun v Hooper*, 40 Mich 503, 505 (1879):

> [T]he term "officer," as used in Art. 18, § 1 of the [1850] constitution, was said to apply and refer to such offices as have some degree of permanence, and are not created by a temporary nomination for a single and transient purpose. [Emphasis added.]

The requirement of "some degree of permanence" set forth in *Underwood* and *Shurbun* is pertinent in light of the fact that each emergency manager position is established and filled to address a particular fiscal crisis and the person appointed continues in that position only so long as a financial crisis exists. See MCL 141.1515(8) and (9). Regardless of whether the Court of Appeals erred by failing to consider whether Roberts is an "officer" within the meaning of article 11, § 1 of the 1963 Constitution, consideration of this issue is no longer necessary because I conclude that the Governor's reappointment of Roberts has rendered this proceeding moot.

4

141.1515(5) and (8). Thus, I conclude that the Governor had the statutory authority to reappoint Roberts, regardless of whether Davis's claims have any merit.

Neither MCL 141.1501 *et seq.* nor the statutes applicable to emergency managers[7] preclude reappointment of a person to the office of emergency manager if that person previously held the position.

At oral argument before this Court, Davis argued that allowing the Governor to reappoint Roberts would render article 11, § 1 of the 1963 Constitution meaningless. I disagree. Article 11, § 1 requires "[a]ll officers, legislative, executive and judicial" to take the oath of office before commencing their duties. MCL 201.3(7) provides that failure to comply with this requirement renders the office vacant. While allowing the Governor to reappoint Roberts in this case would mean there are no permanent consequences for Roberts's alleged failure to comply with article 11, § 1 of the 1963 Constitution, it does not follow that the Constitution has no effect whatsoever.

In this case, *if* Roberts was an officer within the meaning of article 11, § 1 of the 1963 Constitution, and he failed to comply with that provision, then his office would have been legally vacant until the Governor reappointed him.[8] Moreover, the failure to properly take an oath by an *elected* official may have more permanent consequences because such an official may not be eligible for appointment to that vacated elective office. In any event, because a violation of this constitutional provision results in the vacation of office, I believe that the purpose of article 11, § 1 is vindicated, not rendered "meaningless" as Davis asserts.

### III. THE EFFECT OF REAPPOINTMENT

Because the Governor has reappointed Roberts to the office of Emergency Manager for the Detroit Public Schools, and Roberts has taken the oath of office upon reappointment, the instant proceeding is now moot.

In order for the Court of Appeals to accept a complaint from a citizen for a writ of quo warranto, the citizen must demonstrate sufficient apparent merit to bring the action.[9]

---

[7] MCL 141.1515a provides that an emergency manager is subject to MCL 15.321 to 15.330, as a public servant; MCL 15.341 to 15.348, as a public officer; and MCL 15.301 to 15.310, as if he or she were a state officer.

[8] If Davis's assertions were meritorious and Roberts was ousted for his alleged failure to comply with article 11, § 1 or MCL 15.93, then the actions Roberts took as Emergency Manager for the Detroit Public Schools before ouster would be validated because Roberts would have been serving as a de facto officer. See *Bd of Auditors of Wayne Co v Benoit*, 20 Mich 176, 180 (1870) ("Whatever may be the case in regard to a mere intruder, without any claim or color of title, there can be no doubt that a person actually obtaining office with the legal *indicia* of title is a legal officer until ousted, so far as to render his official acts as valid as if his title were not disputed.").

[9] *Penn Sch Dist No 7 v Lewis Cass Intermediate Sch Dist Bd of Ed*, 14 Mich App 109, 118 (1968) ("With regard to an application for leave to bring quo warranto, the

5

Thus, the burden is on Davis to show that there are sufficient grounds to file a complaint for quo warranto to oust Roberts from his position as Emergency Manager for the Detroit Public Schools.

When reappointed, Roberts took and filed the oath of office on April 2, 2012. For his most recent appointment, Roberts complied with all of the constitutional and statutory provisions Davis alleges that Roberts violated. Thus, Roberts appears to be currently serving as a de jure emergency manager. Accordingly, there is not sufficient apparent merit to allow Davis to initiate a quo warranto action against Roberts to oust him from his position as Emergency Manager for the Detroit Public Schools.

For these reasons, I concur in the Court's decision to vacate the reasoning of the Court of Appeals' decision and dismiss Davis's application for leave to appeal on grounds of mootness.

MARKMAN, J. (*concurring*).

I concur in the order for it is clear that the present controversy concerning the timeliness of the emergency manager's oath has now been rendered moot. However, our state is fortunate that this controversy has arisen in the context of an official who could easily be reappointed to public office, as occurred here, unlike, for example, a state legislator. I write separately only to respond to the Chief Justice's suggestion that the emergency manager might not even be constitutionally required to take an oath.

First, I believe that logic suggests that the emergency manager must take an oath of office. Given that the responsibilities of the emergency manager are, during extraordinary economic circumstances, to carry out the duties of the mayor and the members of the city council of a municipality, all of whom themselves are required to take oaths of office, it would seem anomalous that an official serving in their stead would not also be required to make the same commitment to the laws and constitutions of the United States and Michigan. Moreover, it is noteworthy that respondent himself has

---

controlling considerations should be 'whether an appropriate application was made to the Attorney General, in cases where required, and whether the application discloses sufficient apparent merit to justify further inquiry by quo warranto proceedings.'"), quoting 4 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 237.

See also *Marian v Beard*, 259 Mich 183, 186-87 (1932) ("In the application for leave to file information or to obtain action of the prosecuting attorney or attorney general, the showing of the right to the remedy must be 'precise and positive.'"), citing *Cain v Brown*, 111 Mich 657, 659 (1897); *Boucha v Alger Circuit Judge*, 159 Mich 610, 611 (1910) (dismissing a petition to file an action for quo warranto when the complaint did not make a showing sufficiently clear and definite as to the facts to make out a prima facie case).

never asserted that he is not required to take an oath, and indeed he has now undertaken to subscribe to exactly such an oath on two separate occasions.

Second, this case seems significantly distinguishable from *Underwood v McDuffee*, 15 Mich 361 (1867), which held that "referees" are not officers within the meaning of Const 1850, art 18, § 1, a predecessor of Const 1963, art 11, § 1. Such "referees," were "appointed only when [the] parties consent[ed], or waive[d] their right to a jury," and their authority was "confined to the particular suit." *Underwood,* 15 Mich at 367. Unlike referees, emergency managers are not "depend[ent] upon the will of private persons, who may call [them] into existence for their own purpose, and at their own pleasure," and their authority is not "confined to [a] particular suit." *Id.* The "impermanence" of the "referee" is far different, in my judgment, from the "impermanence" of such positions as emergency financial managers and cabinet officers, each of whom serve at the "pleasure of the Governor" and without fixed terms of office.

Finally, even assuming that an emergency manager is not an "officer" within the meaning of Const 1963, art 11, § 1, respondent himself acknowledges that he is in the "service of the state," within the meaning of MCL 15.151, which requires all such persons "as a condition of their employment, [to] take and subscribe to the oath or affirmation required of members of the legislature and other public officers by section 2 of article 16 of the constitution of 1908 of the state of Michigan." Section 2 of article 16 of the constitution of 1908 of the state of Michigan, another predecessor of Const 1963, art 11, § 1, requires officers to take the oath "before they enter on the duties of their respective offices."



I, CORBIN R. DAVIS, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

_April 16_____, 20_12_       _____

Clerk