## MUDGE v MACOMB COUNTY

Docket No. 140863. Submitted April 14, 1994, at Lansing. Decided
  May 5, 1995, at 9:10 A.M. Leave to appeal sought.

Tanya J. Mudge and Jonathon Brown brought an action in the
  Macomb Circuit Court against Macomb County, Macomb
  County Sheriff's Department, and William Hackel, Macomb
  County Sheriff, seeking monetary damages for the failure of the
  defendants to comply with the mandates of the Prisoner Reim-
  bursement to the County Act (PRCA), MCL 801.81 *et seq.*; MSA
  28.1770(1) *et seq.*, and monetary damages and injunctive relief
  pursuant to 42 USC 1983 for alleged violations of federal civil
  rights arising out of the failure to comply with the PRCA. The
  court, Deborah A. Servitto, J., granted summary disposition for
  the defendants. The plaintiffs appealed.

  The Court of Appeals *held:*

  1. The PRCA authorizes a county to seek reimbursement for
  incarceration expenses of jail prisoners in a civil action brought
  in a district or circuit court within six months of a prisoner's
  release. However, the act provides that a county, before exercis-
  ing that authority, must investigate the financial status of the
  prisoner and develop and use a form for determining that
  financial status, taking into consideration any legal or moral
  obligations of the prisoner to support a spouse, minor children,
  or other dependents. Once a court determines that reimburse-
  ment is appropriate, it may enter a money judgment against
  the prisoner and order that the prisoner's property be liable for
  reimbursement. Only when necessary to protect the county's
  right of reimbursement may the county attorney seek an ex
  parte order restraining the prisoner from disposing of property
  pending a hearing to show cause why a particular property
  should not be applied to the reimbursement.

  2. The county's authority to seek reimbursement is purely
  statutory. The defendants acted beyond that statutory author-
  ity by obtaining ex parte orders relative to the plaintiffs'
  property from the judges that sentenced the plaintiffs rather
  than filing separate civil actions, by obtaining and implement-

REFERENCES

Am Jur 2d, Courts § 94; Penal and Correctional Institutions § 215.
See ALR Index under Pleadings; Prisons and Prisoners.

ing ex parte orders seizing the plaintiffs' property where there was no evidence that such orders were necessary to protect the county's right of reimbursement, by failing to investigate the plaintiffs' financial status before seeking reimbursement, and by seizing bond money posted on behalf of the plaintiffs without ascertaining whether such bond money had been posted by the plaintiffs or by others. Because the defendants failed to file separate civil actions as required by the PRCA, the plaintiffs were deprived of procedural due process of law. Although the circuit court that entered those orders had subject-matter jurisdiction, and thus the orders were not void, the court's exercising of that jurisdiction was erroneous. Accordingly, pursuant to MCR 7.216(A)(7), the circuit court's ex parte orders must be vacated, and defendant county must return to the plaintiffs the bond money and any other money recovered as a result of collection actions, with interest.

3. Because the ex parte orders have been vacated and the statutory period for seeking reimbursement under the PRCA has lapsed relative to the claims against the plaintiffs, the defendants are without authority to now seek reimbursement.

4. The trial court abused its discretion in dismissing with prejudice the federal claims under 42 USC 1983 for violation of due process rights on the basis of the failure of the plaintiffs to cite any jurisdictional authority for the proposition that state courts may exercise jurisdiction over those federal claims. On remand, the trial court must permit the plaintiffs an opportunity to amend their complaint relative to this omission.

5. The claim for damages under 42 USC 1983 against the sheriff was in his official capacity, and, thus, the claim is a claim essentially against the county itself, for which the county cannot invoke a defense of qualified immunity based on good faith. Accordingly, the trial court erred in dismissing the claim for damages under 42 USC 1983 against the sheriff on the basis that he was entitled to absolute quasi-judicial or qualified immunity.

6. A municipal corporation is liable for damages under 42 USC 1983 only where the alleged deprivation of a protected right is the result of an official policy adopted by the municipal corporation. Accordingly, for liability for damages to attach to the county, the plaintiffs must prove on remand the existence of an official policy or custom adopted by the county that resulted in the deprivation of a protected right.

7. The requested injunctive relief is unnecessary in view of the disposition of the other issues.

Summary disposition reversed, ex parte orders vacated, and case remanded.

1. Courts — Subject-Matter Jurisdiction — Prisoner Reimbursement to the County Act.

   A circuit court although having subject-matter jurisdiction to adjudicate matters brought pursuant to the Prisoner Reimbursement to the County Act may not exercise that jurisdiction in the absence of the filing of a formal complaint and summons (MCL 801.81 *et seq.*; MSA 28.1770[1] *et seq.*).

2. Counties — Jail Inmates — Reimbursement of Incarceration Expenses.

   The Prisoner Reimbursement to the County Act is a county's exclusive remedy for seeking reimbursement of incarceration expenses from an inmate of that county's jail (MCL 801.81 *et seq.*; MSA 28.1770[1] *et seq.*).

*Lawrence A. Baumgartner* and *James M. Hacker,* for the plaintiffs.

*O'Leary, O'Leary, Jacobs, Mattson & Perry, P.C.* (by *John P. Jacobs*), and *George E. Brumbaugh,* for the defendants.

Before: Holbrook, Jr., P.J., and Reilly and G. W. Hood,* JJ.

Per Curiam. In this putative class action lawsuit, plaintiffs, Tanya J. Mudge and Jonathon Brown, alleged that defendants, Macomb County, Macomb County Sheriff's Department, and William Hackel, the Macomb County Sheriff, violated the Prisoner Reimbursement to the County Act (PRCA), MCL 801.81 *et seq.*; MSA 28.1770(1) *et seq.*, by obtaining and implementing ex parte orders seizing plaintiffs' bond monies for reimbursement of the expense of plaintiffs' incarceration in the Macomb County jail. Plaintiffs further alleged that they were entitled to monetary damages and injunctive relief under 42 USC 1983 for defendants' violation of their federal civil rights. Defendants moved for summary disposition on various

---

* Circuit judge, sitting on the Court of Appeals by assignment.

grounds. The trial court denied defendants' motion, but, on rehearing, granted the motion and dismissed plaintiffs' complaint with prejudice. Plaintiffs appeal as of right.

I

The PRCA authorizes a county, in its discretion, to seek reimbursement for incarceration expenses of not more than $30 a day from jail prisoners by filing a civil action in either the district or the circuit court within six months of a prisoner's release from the county jail. MCL 801.83(1)(a), 801.87(1); MSA 28.1770(3)(1)(a), 28.1770(7)(1).[1] Before exercising this authority, a county must investigate the financial status of the prisoner or former prisoner from whom reimbursement is sought and, to this end, the county must develop and use a form for determining the financial status of prisoners. MCL 801.83(1)(b), (2); MSA 28.1770(3)(1)(b), (2). Before entering any order on behalf of a county in an action against a prisoner or former prisoner for reimbursement, a court must take into consideration any legal or moral obligations of the defendant to support a spouse, minor children, or other dependents. MCL 801.87(3); MSA 28.1770(7)(3). Once the court determines that reimbursement is appropriate, it may enter a "money judgment" against the defendant and may order that the defendant's property is liable for reimbursement. MCL 801.87(4); MSA 28.1770(7)(4). Only when "necessary to protect the county's right to obtain reimbursement" may a county attorney "seek issuance of an ex parte restraining order to

---

[1] Recently, the Legislature amended the PRCA to extend the period for filing a civil action from six to twelve months, and increased the per diem amount recoverable from $30 to $60. 1984 PA 118, as amended by 1994 PA 212, MCL 801.83(1)(a), 801.87(1); MSA 28.1770(3)(1)(a), 28.1770(7)(1).

restrain the defendant from disposing of the property pending a hearing on an order to show cause why the particular property should not be applied to reimbursement." MCL 801.88(2); MSA 28.1770(8)(2). A prisoner's sentencing judge and the county sheriff must furnish all information and assistance possible to a county attorney seeking reimbursement. MCL 801.91; MSA 28.1770(11).

The Legislature's stated purpose in enacting the PRCA was "to provide certain powers and duties of county officials; and to provide for the reimbursement of certain expenses incurred by counties in regard to prisoners sentenced to county jail." 1984 PA 118. Because the statute was intended to protect the public from financial loss, it is an exercise of police power delegated to county officials. See *People v Murphy,* 364 Mich 363, 368; 110 NW2d 805 (1961). Municipal corporations derive all police power from legislative act. Const 1963, art 7, § 1; *People v Armstrong,* 73 Mich 288; 41 NW 275 (1889). Accordingly, a municipal corporation can exercise only the police power that is granted to it in express terms, that is necessarily or fairly implied in or incident to those express powers, or that is indispensable to accomplish the objects and purposes of the corporation. *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567; 363 NW2d 641 (1984).

Here, defendants clearly acted ultra vires of the PRCA by (1) obtaining ex parte orders from plaintiffs' sentencing judge in their respective criminal cases instead of filing a separate civil action; (2) obtaining and implementing ex parte orders seizing plaintiffs' bond monies where there was no evidence that such ex parte orders were necessary; (3) failing to investigate plaintiffs' financial status

before seeking reimbursement;[2] and (4) seizing bond monies posted in plaintiffs' respective criminal cases without ascertaining whether such bond monies in fact were posted by plaintiffs or by others.[3]

Because defendants failed to file a separate civil action as expressly required by the PRCA, plaintiffs were deprived of procedural due process of law, which at a minimum demands that a party be given notice and an opportunity to be heard. *Mullane v Central Hanover Bank & Trust Co,* 339 US 306, 314; 70 S Ct 652; 94 L Ed 865 (1950); *Ridenour v Bay Co,* 366 Mich 225, 240; 114 NW2d 172 (1962). Absent the filing of a complaint and summons in accordance with the court rules, the circuit court's exercise of jurisdiction was erroneous. See *Stump v Sparkman,* 435 US 349; 98 S Ct 1099; 55 L Ed 2d 331 (1978) (finding that judge of state court of general jurisdiction did not exceed his jurisdiction in issuing ex parte order on same day as mother's informal presentation of affidavit requesting authorization to sterilize minor daughter).

Subject-matter jurisdiction is the right of the court to exercise judicial power over a class of cases, not the particular case before it. *Joy v Two-Bit Corp,* 287 Mich 244, 253-254; 283 NW 45 (1938); *Altman v Nelson,* 197 Mich App 467, 472; 495 NW2d 826 (1992). The PRCA expressly confers on the circuit court subject-matter jurisdiction of cases brought under its provisions. MCL 801.88(1);

---

[2] The record indicates that plaintiff Mudge's bond monies were seized in July 1989 and, according to defendants, she did not receive defendants' financial status form until September 1989. Plaintiff Brown received defendants' financial status form on June 27, 1989, and his bond monies were seized the next day.

[3] In future cases, we direct defendants to ascertain information regarding the source of posted bond monies before seeking to attach it for reimbursement purposes under the PRCA. Only where it can be shown that the prisoner is the source of the bond money does it become subject to attachment.

MSA 28.1770(8)(1). Therefore, notwithstanding the absence of the filing of formal complaints and summonses, the circuit court was vested with subject-matter jurisdiction to adjudicate these underlying matters brought pursuant to the PRCA. *Stump, supra.* Thus, the action taken by the circuit judge in entering the ex parte orders, although an erroneous exercise of undoubted jurisdiction, was not void. *Bowie v Arder,* 441 Mich 23, 56; 490 NW2d 568 (1992); *Altman, supra* at 477. In light of defendants' ultra vires acts, resulting in plaintiffs being deprived of procedural due process of law, and the circuit court's erroneous exercise of jurisdiction, we exercise our authority pursuant to MCR 7.216(A)(7) to vacate the circuit court's ex parte orders and to order defendant Macomb County to return the representative plaintiffs' bond monies and any money recovered as a result of collection actions, along with interest.

II

In their counterclaim, defendants assert that, even if the period of limitation had run under the PRCA, they are entitled to recoupment from plaintiffs via alternative setoff theories of indemnity, breach of contract, quantum meruit, suit for debt, or the PRCA. We disagree.

A county, as a political subdivision of the state, possesses only those powers delegated to it by constitution or statute. Const 1963, art 7, § 1; *Wright v Bartz,* 339 Mich 55; 62 NW2d 458 (1954). By statute, each county is required to maintain a jail at its own cost and expense. MCL 45.16; MSA 5.291. Before enactment of the PRCA, a county was liable for all expenses of safekeeping and maintaining inmates in its county jail, except medical care expenses for which it could seek reimburse-

ment from the prisoner or the prisoner's insurer. MCL 801.4, 801.5a; MSA 28.1724, 28.1725(1). Concomitant with enactment of the PRCA, the Legislature amended MCL 801.5; MSA 28.1725, which authorized counties to acquire by contract or private donation all necessary supplies for maintenance of county jails, to include a provision reflecting the county's ability to seek reimbursement for all charges and expenses of incarceration from a prisoner pursuant to the PRCA. MCL 801.5(4); MSA 28.1725(4). Thus, it is apparent that the Legislature has not authorized a county to seek reimbursement from inmates via common-law remedies, such as breach of contract or quantum meruit. Accord *People v Krieger,* 202 Mich App 245, 249; 507 NW2d 749 (1993); *People v Gonyo,* 173 Mich App 716, 719; 434 NW2d 223 (1988). Moreover, a statute that creates a liability and provides a remedy specifically adapted to its enforcement impliedly excludes less appropriate common-law remedies. *Pompey v General Motors Corp,* 385 Mich 537, 553, n 15; 189 NW2d 243 (1971). Accordingly, we conclude that the Legislature intended the PRCA to constitute a county's exclusive remedy for seeking reimbursement of incarceration expenses from an inmate of that county's jail.

Because the ex parte orders in this case have been vacated, and because the statutory period for seeking reimbursement under the PRCA has lapsed with respect to the representative plaintiffs, defendants' opportunity to secure reimbursement (or recoupment by counterclaim) from these plaintiffs is lost.

III

Our finding that defendants acted ultra vires of the PRCA does not end the matter. Plaintiffs'

amended complaint also alleged that defendants had deprived them of their property without due process of law in violation of federal law, and they sought monetary damages and injunctive relief under 42 USC 1983 for violation of those federal rights. Thus, we must also address whether defendants' motion for summary disposition was granted properly with respect to these claims.

### A. VIOLATION OF PRCA AS FEDERAL DUE PROCESS CLAIM

The trial court dismissed plaintiffs' federal due process claims, finding that they had failed to cite any jurisdictional authority to permit state court jurisdiction over the federal claims.

Dismissal with prejudice of a claim is a harsh remedy and should be applied only in extreme situations. *North v Dep't of Mental Health,* 427 Mich 659, 662; 397 NW2d 793 (1986). We find that the trial court abused its discretion in dismissing plaintiffs' federal due process claims on the sole basis that they had failed to cite jurisdictional authority for the federal claims. On remand, the trial court is directed to permit plaintiffs an opportunity to amend their complaint relative to this omission.

### B. 42 USC 1983 CLAIM

In paragraph 6 of their amended complaint, plaintiffs sought monetary damages and injunctive relief under 42 USC 1983 for defendants' violation of their federal civil rights. The trial court dismissed the monetary damages claim, finding that defendant sheriff (and his employees) were entitled to either absolute quasi-judicial or qualified immunity. The court also dismissed the claim for injunc-

tive relief, finding that it was without authority to countermand a coequal judge's order.

Section 1983 provides a remedy for the violation of a person's constitutionally protected rights by any person acting under color of state law. *Davis v Wayne Co Sheriff,* 201 Mich App 572, 576-577; 507 NW2d 751 (1993). A municipality, including a local governing body such as a county, is a "person" for purposes of § 1983 liability but may only be sued for its own unconstitutional or illegal policies or customs, not for the acts of its employees or agents. *Monell v New York City Dep't of Social Services,* 436 US 658; 98 S Ct 2018; 56 L Ed 2d 611 (1978). A § 1983 claim against a municipal employee or agent for acts undertaken in an official capacity is tantamount to a claim against the municipality that the employee or agent represents. *Kentucky v Graham,* 473 US 159, 165-166; 105 S Ct 3099; 87 L Ed 2d 114 (1985). Liability for damages may be imposed on a municipality only where execution of a municipal policy or custom rises to the level of deliberate indifference to a person's constitutional or statutory rights. *Canton v Harris,* 489 US 378; 109 S Ct 1197; 103 L Ed 2d 412 (1989); *Rushing v Wayne Co,* 436 Mich 247, 260-261; 462 NW2d 23 (1990), cert den 499 US 920 (1991). In addition, the policy or custom actually must cause or be closely related to the person's ultimate injury. *Id.* at 261; *Davis, supra* at 577.

Our review of plaintiffs' amended complaint reveals that their claim for damages is asserted against Sheriff Hackel in his official capacity as Macomb County Sheriff. Accordingly, we construe plaintiffs' complaint as seeking to recover damages only from Macomb County. *Brandon v Holt,* 469 US 464; 105 S Ct 873; 83 L Ed 2d 878 (1985). In a § 1983 action, municipalities cannot invoke a qualified immunity defense based on good faith, al-

though they are immune to claims for punitive damages. *Owen v Independence,* 445 US 622, 635-658; 100 S Ct 1398; 63 L Ed 2d 673 (1980); *Newport v Fact Concerts, Inc,* 453 US 247; 101 S Ct 2748; 69 L Ed 2d 616 (1981). Personal immunities are unavailable to employees or agents in actions for damages under § 1983 brought against them in their official capacities, because only the liability of the municipal entity is at issue. *Owen, supra; Brandon, supra.* Thus, we conclude that the trial court misconstrued either plaintiffs' complaint or § 1983 jurisprudence by finding that Sheriff Hackel was entitled to absolute quasi-judicial or qualified immunity.

Because a municipality is liable under § 1983 only for its own unconstitutional or illegal policies or customs, liability cannot be imposed solely because it employs a tortfeasor. *Monell, supra* at 691. Municipal liability attaches under § 1983 where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v Cincinnati,* 475 US 469, 483-484; 106 S Ct 1292; 89 L Ed 2d 452 (1986). The determination whether a person has final decision-making authority to establish municipal policy regarding a particular subject matter is a question of state law. *St Louis v Praprotnik,* 485 US 112; 108 S Ct 915; 99 L Ed 2d 107 (1988) (plurality opinion). Pursuant to our state constitution, a county is not liable for the acts of its sheriff, notwithstanding that the sheriff's department is an agency of the county. Const 1963, art 7, § 6. However, state law immunities, whether arising from constitutional provision, statute, or common law, do not protect persons otherwise subject to § 1983 liability. *Howlett v Rose,* 496 US 356; 110 S Ct 2430; 110 L Ed

2d 332 (1990); *Rushing, supra* at 259. Consequently, in a § 1983 action, a sheriff's policies are generally attributable to the county. *Id.* at 260; *Marchese v Lucas*, 758 F2d 181, 189 (CA 6, 1985), cert den 480 US 916 (1987).

The PRCA expressly provides that the county, through its board of commissioners, county executive, or designee of the county executive, must be the moving force behind the decision to seek reimbursement. MCL 801.84; MSA 28.1770(4). Although defendants acknowledge that the county's prisoner reimbursement program was the "dual creation" of the Macomb Circuit Court and the Macomb County Sheriff's Department, we are unable to determine from the limited record available whether the program, as implemented, was authorized by legislative act of the county's board of commissioners. Thus, in order for municipal liability to attach, the existence of an official municipal policy or custom remains to be proven by plaintiffs on remand.[4]

Finally, plaintiffs' request for injunctive relief has been satisfied by our order that defendants return the bond monies of plaintiffs Mudge and

---

[4] The proofs necessary to establish the existence of a municipal policy or custom have not been clearly defined. Nonetheless, in *Pembaur, supra* at 483, n 12, the Court offered the following hypothetical example, which we find relevant and insightful under our particular facts:

> [F]or example, the County Sheriff may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy. . . . Instead, if county employment policy was set by the Board of County Commissioners, only that body's decisions would provide a basis for county liability. This would be true even if the Board left the Sheriff discretion to hire and fire employees and the Sheriff exercised that discretion in an unconstitutional manner; the decision to act unlawfully would not be a decision of the Board. However, if the Board delegated its power to establish final employment policy to the Sheriff, the Sheriff's decision *would* represent county policy and could give rise to municipal liability.

Brown. To the extent that plaintiffs seek an injunction against further violations of the PRCA, we do not believe that, in light of this opinion, such action is necessary.

The trial court's order of summary disposition is reversed and this matter is remanded for further proceedings. The issues yet to be determined regarding plaintiffs' § 1983 claim include the existence of an official municipal policy or custom, causation, and the amount of nonpunitive compensable damages to which plaintiffs are entitled, if any. The ex parte orders entered against plaintiffs Mudge and Brown are vacated; therefore, we order defendant Macomb County to return plaintiffs' bond monies and any money recovered as a result of collection actions plus interest within sixty days from the date this opinion is released.

We do not retain jurisdiction.