SAGINAW COUNTY v JOHN SEXTON CORPORATION OF MICHIGAN

SAGINAW COUNTY v PEOPLE'S GARBAGE DISPOSAL, INC

Docket Nos. 199519, 199520. Submitted July 1, 1998, at Lansing. Decided
October 16, 1998, at 9:05 A.M. Leave to appeal sought.

Saginaw County brought actions in the Saginaw Circuit Court against
landfill operators John Sexton Corporation of Michigan and People's Garbage Disposal, Inc., seeking payment by the defendants to
the Saginaw County Treasurer of surcharges collected by the
defendants from trash depositors at fifty cents a cubic yard of solid
waste as provided under the county's solid waste ordinance. The
defendants counterclaimed that the ordinance was invalid and
unenforceable because it was preempted by state waste disposal
statutes and regulations and that the surcharge constituted a tax
that was invalid because it was not submitted to voter approval as
required under the Headlee Amendment, Const 1963, art 9, § 31.
The actions were consolidated, and the court, William A. Crane, J.,
on a joint motion by the defendants for summary disposition, partially granted the motion, ruling that state statutes had preempted
most of the ordinance, but that the surcharge provision was severable from the ordinance and was valid and enforceable. The defendants appealed separately, and their appeals were consolidated.

The Court of Appeals held:

1. The ordinance, in requiring the defendants to perform fee collection duties, does not improperly delegate governmental authority to private parties. The ordinance merely imposes a ministerial
duty on landfill owners and operators to collect fees payable by
those who deposit waste in landfills. The ordinance does not provide landfill operators with any discretion in setting the surcharge
amount or in deciding from whom the surcharge is collected. The
defendants' claim that the duty of tax or fee collection may be
imposed only on a private party who itself has an obligation to pay
the tax or fee is without merit. The defendants failed to cite authority supportive of this claim. A landfill operator's duty to collect the
surcharge pursuant to the ordinance is analogous to the duty
imposed by the Uniform City Utility Users Tax Ordinance, MCL
141.1161 et seq.; MSA 5.3188(261) et seq., on utility service providers to collect a tax imposed on utility users.

2. The surcharge represents a valid regulatory fee, not a tax, and enactment of the surcharge did not violate the Headlee Amendment. A fee generally is exchanged for a service rendered or a benefit conferred, and some reasonable relationship must exist between the amount of the fee and the value of the service or benefit. A regulatory fee will be deemed to be an illegal tax when the revenue generated by the regulation exceeds the cost of the regulation. In this case, the surcharge is reasonably related to the costs involved in implementing the county's solid waste disposal plan.

3. The surcharge provision of the ordinance is not preempted by the solid waste management act, MCL 324.11501 *et seq.*; MSA 13A.11501 *et seq.* Preemption occurs when a municipal ordinance directly conflicts with a statute or statutory scheme or when, even if the ordinance and the statute do not directly conflict, the state statutory scheme occupies an entire field of regulation. In this case, the surcharge provision does not conflict with the solid waste management act or with regulations promulgated thereunder, and the act does not occupy the field of landfill regulation because it expressly prohibits only those local regulations that attempt to regulate landfill location and development.

4. MCL 46.11; MSA 5.331—which empowers a county board of commissioners to pass ordinances that relate to county affairs and do not contravene the general laws of this state or interfere with the local affairs of a township, city, or village within the limits of the county—grants Saginaw County authority to adopt the surcharge requirement. The surcharge requirement is consistent with the county's solid waste management plan and does not affect landfill location or development and therefore is not a local regulation that is prohibited by subsection 11538(8) of the solid waste management act, MCL 324.11538(8); MSA 13A.11538(8). Subsection 115201(1), MCL 324.115201(1); MSA 13A.11520(1), contemplates the imposition of the surcharge.

5. The imposition of the surcharge on only those who deposit solid waste at Type II landfills does not violate equal protection guarantees under the federal and state constitutions. A rational basis exists for imposing the surcharge on those who increase the county's solid waste management burden and for imposing the surcharge only for solid waste deposited in Type II landfills, which, unlike Type III landfills, accept a variety of solid waste from the general public.

6. The penalty provisions of the ordinance are invalid because they exceed those that the Legislature has authorized counties to impose, MCL 46.10b(1); MSA 5.330(2)(1). However, the invalid pen-

alty provisions have no effect on the enforceability of the surcharge requirement.

Affirmed.

1. Counties — Tax or Fee Collection — Private Entities — Delegation of Powers.

A county does not improperly delegate legislative authority to private entities in requiring them to collect a tax or fee as required under an ordinance where the ordinance merely imposes a ministerial duty of collection and does not provide the private entities with discretion to decide how much to collect and from whom.

2. Constitutional Law — Headlee Amendment — Regulatory Fees — Taxes.

The amount of a regulatory fee must be reasonably related to the value of the service or benefit conferred, and a regulatory fee will be deemed to be a tax for which voter approval is required by the Headlee Amendment where the revenue generated by the regulation exceeds the cost of the regulation (Const 1963, art 9, § 31).

3. Environment — Solid Waste Management Act — Preemption of Local Landfill Regulation.

The solid waste management act preempts only those local regulations that attempt to regulate landfill location and development (MCL 324.11538; MSA 13A.11538).

4. Counties — Ordinances.

A county board of commissioners is statutorily empowered to pass ordinances that relate to county affairs and do not contravene the general law of the state or interfere with the local affairs of a township, city, or village within the limits of the county; such authority is liberally construed to include powers fairly implied and not prohibited by the state constitution (Const 1963, art 7, § 34; MCL 46.11[m]; MSA 5.331[m]).

5. Constitutional Law — Equal Protection — Rational Basis.

The rational basis test is employed by courts when considering an equal protection claim raised by one who is not a member of a protected class or does not allege a violation of a fundamental right (US Const, Am XIV; Const 1963, art 1, § 2).

*Jensen, Gilbert, Smith & Borello, P.C.* (by *Peter C. Jensen*), for the plaintiff.

*Thomas M. Fallucca,* for the defendants.

Before: Murphy, P.J., and Gribbs and Gage, JJ.

GAGE, J. Defendants appeal as of right the trial court's partial denial of their motion for summary disposition. We affirm.

This case involves a dispute regarding the enforceability of § 280 of the Saginaw County Solid Waste Ordinance. In 1984, plaintiff's solid waste management plan, by which it accepted responsibility for countywide planning and management of solid waste disposal, was approved by the Department of Natural Resources (DNR). In 1993, the DNR approved plaintiff's update to the plan. Paragraph eight of the update provided that plaintiff's board of commissioners would pursue and explore all feasible means of financing countywide solid waste management, including tax levies, state and federal grants, bond issues, and licensing fees. Pursuant to the update, the board of commissioners also intended to establish an enforcement agency to carry out the provisions of the plan. The board envisioned enforcement agency funding from "surcharges, tipping fees and/or other appropriate means of financing."

In November 1990, Saginaw County voters approved a millage increase for the purpose of establishing and operating plaintiff's recycling and other waste management programs. However, in 1993 plaintiff elected not to collect this millage because of plaintiff's concern that it would exceed its millage cap. Also in 1993, the Governor withdrew all state funding of county health departments.

In August 1993, plaintiff's board of commissioners adopted a solid waste ordinance, § 280 of which imposed a fifty-cent surcharge on every cubic yard of solid waste disposed of in county landfills. Subsection 280.2 mandated that all surcharge payments be paid

quarterly to the county treasurer, but failed to identify the intended payor. Defendants admitted that they had collected the surcharge from those dumping waste in their landfills, but did not remit any of the collected money to the county treasurer. Plaintiff initially filed separate complaints in January and February 1994 against defendant landfill operators alleging their nonpayment of the disposal surcharge. Defendants counterclaimed that the ordinance was invalid and unenforceable because it was preempted by state waste disposal statutes and regulations, and that the surcharge constituted an illegal tax and was unconstitutionally vague. A September 1994 amendment of subsection 280.2 stated explicitly that landfill owners and operators were to collect the surcharge and remit quarterly surcharge payments to the county treasurer.

In May 1995, defendants moved for summary disposition. The trial court agreed that state statutes had preempted most of the ordinance, and concluded that the surcharge provision as originally enacted was unconstitutionally vague. Because plaintiff had brought its claims pursuant to this vague preamendment § 280, the trial court dismissed plaintiff's complaint. However, the trial court found that the September 1994 amendment of § 280 cured its vagueness problem and that the surcharge was severable and would remain in effect.

I

First, defendants contend that the trial court erred in upholding the validity of postamendment § 280. They argue that this section improperly delegates governmental authority to private parties by requiring

that defendants perform tax collection duties. We disagree.

Defendants cite two Michigan cases addressing delegations of legislative authority. *Blue Cross & Blue Shield of Michigan v Governor*, 422 Mich 1; 367 NW2d 1 (1985); *Penn School Dist No 7 v Lewis Cass Intermediate School Dist Bd of Ed*, 14 Mich App 109; 165 NW2d 464 (1968). The Supreme Court in *Blue Cross & Blue Shield, supra* at 51, explained that "[c]hallenges of unconstitutional delegation of legislative power are generally framed in terms of the adequacy of the standards fashioned by the Legislature to channel the agency's or individual's exercise of the delegated power." Legislative delegations of power are reviewed in terms of the adequacy of the standards provided to guide the exercise of the power whether the Legislature has delegated power to an administrative agency, the judiciary, or a private group or person. *Dukesherer Farms, Inc v Director of the Dep't of Agriculture*, 405 Mich 1, 25, n 4; 273 NW2d 877 (1979). The Supreme Court concluded in *Blue Cross & Blue Shield, supra*, at 52-55, that the Legislature had impermissibly conferred standardless discretion on the Insurance Commissioner to review risk factors proposed by a statutorily created actuary panel. In *Penn School Dist, supra* at 121-124, this Court recognized that legislative authority generally may not be delegated to private persons or associations, but concluded that the committees authorized to determine school district boundaries did not qualify as private entities because they had been created by statute, and also that these committees possessed sufficient statutory guidance regarding the exercise of their powers.

However, the instant case does not involve a delegation of legislative authority similar to those involved in the cases cited by defendants. The ordinance at issue merely imposes a ministerial duty on landfill owners and operators to collect fees payable by those who deposit waste in the landfills. Plaintiff's ordinance does not provide landfill operators with any discretion in setting the landfill disposal surcharge amounts or in deciding from whom it will collect the surcharge. Under the ordinance, defendants must simply collect fifty cents a cubic foot of waste deposited in their landfills and remit its collections quarterly to the county treasurer. The solid waste management act, MCL 324.11501 *et seq.*; MSA 13A.11501 *et seq.*, also imposes on landfill owners and operators a nearly identical quarterly surcharge collection requirement of municipality-imposed impact fees. MCL 324.11532(4); MSA 13A.11532(4). We conclude that both plaintiff and the Legislature may constitutionally impose these ministerial functions on private landfill owners and operators. See *Whatcom Co v Taxpayers of the Whatcom Co Solid Waste Disposal Dist*, 66 Wash App 284, 293-294; 831 P2d 1140 (1992) (upholding ordinance's delegation of collection of garbage disposal excise tax, a ministerial function, to private garbage collectors). Therefore, because the instant ordinance does not vest defendants with the authority to exercise any legislative discretion, defendants' reliance on the *Blue Cross & Blue Shield, supra,* and *Penn School Dist, supra,* cases involving delegations of legislative authority is misplaced.

Defendants also failed to cite authority to support their argument that it is illegal for a governmental entity to impose a fee or tax collection requirement

on any private entity unless the private entity itself has an obligation to pay the tax or fee. The Uniform City Utility Users Tax Ordinance (Utility Tax Ordinance), MCL 141.1161 *et seq.*; MSA 5.3188(261) *et seq.*, contradicts defendants' argument. While § 3 of the Utility Tax Ordinance imposes a tax on utility users, § 4 imposes on the utility service providers the ministerial task of billing utility customers for the tax. The utility service providers' billing duty is analogous to the landfill operators' duty to collect surcharges from landfill depositors. Therefore, defendants' argument that the duty of tax or fee collection may be validly imposed only on a private party who itself has an obligation to pay the charge is without merit.

II

Second, defendants argue that the landfill surcharge constitutes an illegal tax that violates the Headlee Amendment. Section 31 of the Headlee Amendment prohibits local governments

from levying any tax not authorized by law or charter when this section is ratified or from increasing the rate of an existing tax above that rate authorized by law or charter when this section is ratified, without the approval of a majority of the qualified electors of that unit of Local Government voting thereon. [Const 1963, art 9, § 31.]

Plaintiff did not submit the landfill surcharge issue to the electorate. Therefore, should the surcharge provision impose a tax, it is illegal and unenforceable.

Whether the instant landfill surcharge represents a valid user fee or unconstitutional tax is a question of law that we review de novo. *Gorney v Madison Heights*, 211 Mich App 265, 267; 535 NW2d 263

(1995). Although no bright-line test exists for distinguishing one from the other, a fee generally is exchanged for a service rendered or a benefit conferred, and some reasonable relationship exists between the amount of the fee and the value of the service or benefit. *Bolt v Lansing*, 221 Mich App 79, 86; 561 NW2d 423 (1997), lv gtd 456 Mich 946 (1998); *Northgate Towers Associates v Royal Oak Charter Twp*, 214 Mich App 501, 503; 543 NW2d 351 (1995), modified on other grounds 453 Mich 962 (1996). A regulatory fee will be construed as an illegal tax when the revenue generated by the regulation exceeds the cost of the regulation. *Rouge Parkway Associates v City of Wayne*, 423 Mich 411, 419; 377 NW2d 748 (1985). The Supreme Court examined the regulatory fee/tax distinction in *Merrelli v St Clair Shores*, 355 Mich 575; 96 NW2d 144 (1959).

> To be contrasted with the revenue derived from municipal taxation are those moneys accruing from the issuance of licenses or permits coming under the police power of the community. These are regulatory measures involving the public health, morals, or welfare. . . .

> \*     \*     \*

> . . . One involves an exercise of the municipal power of taxation. Its purpose is to raise money. The other is an exercise of the police power of the community. Its purpose is the protection of the public health, safety, and welfare. True, certain moneys may be obtained in connection therewith, but such moneys are incidental to the accomplishment of the primary purpose of guarding the public. The differences between the 2 were well expressed in *Vernor v Secretary of State*, 179 Mich 157, 167-170 [146 NW 338 (1914)], involving the validity of an automobile licensing fee:

"To be sustained, the act we are here considering must be held to be one for regulation only, and not as a means primarily of producing revenue. Such a measure will be upheld by the courts when plainly intended as a police regulation, and the revenue derived therefrom is not disproportionate to the cost of issuing the license, and the regulation of the business to which it applies. [Citations omitted.]

"Anything in excess of an amount which will defray such necessary expense cannot be imposed under the police power, because it then becomes a revenue measure. [Citations omitted.]

\*        \*        \*

"In determining whether a fee required for a license is excessive or not, the absence or amount of regulatory provisions and the nature of the subject of regulation should be considered, and, if the amount is wholly out of proportion to the expense involved, it will be declared a tax." [*Merrelli, supra* at 582-584.]

The instant landfill surcharge qualifies as a regulatory fee because it is reasonably related to the costs involved in managing the county's disposal of solid waste. Our review of the county's estimated budgetary figures for 1994 indicates that the revenue generated by the landfill surcharge of § 280 does not exceed the costs of implementing the county's solid waste plan. The budget reflects that in 1994 the surcharge generated nearly $400,000. For the same year, the operational costs of the solid waste plan's health department, recycling department, and solid waste (administrative) department totaled over $450,000. According to the county's solid waste management director, these operational costs included county solid waste employee salaries, benefits, and travel expenses, promotion of the county's recycling program, and ordinance enforcement and implemen-

tation activities such as monitoring who utilizes each landfill, recording the landfill activity of each hauler, ensuring that no improper waste enters the landfills, and aerial capacity estimates of landfill space. Thus, the revenues derived from the surcharge fall below these costs of implementing the county's solid waste disposal plan.

Defendants insist that the revenues derived from the landfill surcharge should not be measured against the costs of implementing the county's solid waste disposal plan in its entirety, but against only the health department's budgetary figures. The health department, whose responsibility it is to conduct landfill inspections and to enforce landfill ordinances and statutes, estimated its share of budgetary expenses to amount to less than $120,000. Defendants thus reason that because the landfill surcharge revenues greatly exceed actual landfill inspection and enforcement costs, the surcharge represents a general revenue-raising tax. We disagree.

In *Bowers v Muskegon*, 305 Mich 676; 9 NW2d 889 (1943), the Supreme Court addressed the issue whether revenue from newly installed parking meters constituted a fee or a tax. Muskegon's parking meter ordinance provided that the city would apply parking meter revenues to parking meter regulation and enforcement and to "other traffic control devices and regulations." *Id.* at 681. The plaintiffs alleged that the parking meter fees could exceed by $18,000 the amount of parking meter acquisition, maintenance, and policing costs, and other incidental enforcement expenses, and that they therefore constituted a tax. *Id.* at 682. However, the Supreme Court did not believe "that receiving revenue for 'other traffic con-

trol devices and regulations' . . . [was] so remote from the parking problem that to contemplate proceeds for such purposes from the parking meters is to create an intent as a matter of law to raise 'revenue under the guise of a police regulation.'" *Id.* at 682-683. The Court therefore concluded that the parking meter costs properly constituted fees. *Id.* at 685.

Similarly, we do not believe that any aspect of plaintiff's solid waste program is so remote from its waste disposal problems in landfills that to contemplate proceeds for its recycling program, solid waste administrative costs, and other solid waste purposes from the landfill surcharge revenues is to create an intent as a matter of law to raise revenue under the guise of a police regulation. Plaintiff's other solid waste efforts are intimately connected with its landfill regulations. For example, to the extent that plaintiff successfully promotes its recycling program, these efforts directly affect the amount of waste flowing into county landfills. We agree with the trial court's astute observations regarding this interrelationship:

> The Court further finds that said [landfill surcharge] fee is reasonably related to the cost of implementing the County's solid waste plan, and is proportionate and not in excess of the cost of the regulation. Contrary to defendants' assertion, this Court finds nothing inconsistent with imposing the costs of the recycling program upon those who use the landfills. As was pointed out at oral argument, part of providing solid waste service is preserving landfill space for county generated waste. Recycling is a necessary part of that program so as to ensure that landfills are not quickly filled up, requiring expansion or the opening of new facilities and all the attendant problems that follow. The Court accordingly concludes that the instant surcharge is not a tax as defendants' [sic] suggest but a regulatory fee.

We likewise conclude that the landfill surcharge represents a valid regulatory fee, not a tax, and that therefore enactment of the surcharge did not violate the Headlee Amendment.

III

Third, defendants also suggest that the solid waste management act (hereinafter the act) entirely preempts plaintiff's 1993 solid waste ordinance. Specifically, defendants challenge the trial court's conclusion that the act does not preempt amended § 280 of plaintiff's solid waste ordinance. A preemption determination involves legal questions of statutory interpretation, which we review de novo. *Oakland Co Bd of Co Rd Comm'rs v Michigan Property & Casualty Guaranty Ass'n*, 456 Mich 590, 610; 575 NW2d 751 (1998).

Preemption occurs when a municipal ordinance directly conflicts with a statute or statutory scheme or when, even if the ordinance and the statute do not directly conflict, the state statutory scheme occupies an entire field of regulation. *People v Llewellyn*, 401 Mich 314, 322; 257 NW2d 902 (1977). The *Llewellyn* Court provided the following guidelines to consider in determining whether an ordinance was preempted:

First, where the state law expressly provides that the state's authority to regulate in a specified area of the law is to be exclusive, there is no doubt that municipal regulation is pre-empted.

Second, pre-emption of a field of regulation may be implied upon an examination of legislative history.

Third, the pervasiveness of the state regulatory scheme may support a finding of pre-emption. While the pervasiveness of the state regulatory scheme is not generally suffi-

cient by itself to infer pre-emption, it is a factor which
should be considered as evidence of pre-emption.

Fourth, the nature of the regulated subject matter may
demand exclusive state regulation to achieve the uniformity
necessary to serve the state's purpose or interest.

. . . [W]here the nature of the regulated subject matter
calls for regulation adapted to local conditions, and the
local regulation does not interfere with the state regulatory
scheme, supplementary local regulation has generally been
upheld. [*Id.* at 323-325 (citations omitted).]

The surcharge provision of § 280 does not conflict
with the act or with any of the regulations promul-
gated thereunder. Therefore, § 280 is valid only if the
act does not occupy the field of landfill regulation.

We do not believe that the act occupies the field to
the extent that it preempts plaintiff's surcharge
requirement. First, the act does not expressly provide
that the state has exclusive authority to regulate solid
waste disposal. To the contrary, § 11538 of the act,
MCL 324.11538; MSA 13A.11538, contemplates local
regulation of solid waste disposal. Subsection
11538(8) specifically addresses local landfill mea-
sures, explaining that any such ordinance that "pro-
hibits or regulates the location or development of a
solid waste disposal area, and which is not part of or
not consistent with the approved solid waste manage-
ment plan for the county, shall be considered in con-
flict with this part and shall not be enforceable."
Thus, the act explicitly prohibits only those local reg-
ulations that attempt to regulate landfill location and
development. Second, relevant legislative history
regarding the predecessor of the current act (MCL
299.401 *et seq.*; MSA 13.29[1] *et seq.*) reveals that the
House favored dual state and local control of solid

waste management, although it is impossible to discern the intent of the Senate. *Southeastern Oakland Co Incinerator Authority v Avon Twp*, 144 Mich App 39, 43-44, & 44, n 1; 372 NW2d 678 (1985). The repeal of the prior act and its reenactment as the current act occurred as part of the Legislature's attempt to reorganize all statutes relating to the environment and natural resources, and did not represent a change in legislative policy regarding solid waste. Senate Fiscal Agency Bill Analysis, SB 257, July 19, 1994. Third, as panels of this Court have previously recognized, the state's regulatory scheme of solid waste disposal is pervasive. *Southeastern Oakland Co Incinerator*, *supra* at 44. While this factor is evidence of preemption, pervasiveness is not generally sufficient by itself to infer preemption. *Llewellyn*, *supra* at 324. Fourth, while the nature of solid waste disposal may demand exclusive state regulation regarding location, development, and operation of solid waste disposal areas, see MCL 324.11538(8); MSA 13A.11538(8); *Southeastern Oakland Co Incinerator*, *supra* at 45-46, the instant surcharge provision does not affect these concerns. The surcharge provision is designed to offset the regulatory costs incurred by plaintiff in monitoring and enforcing its solid waste management plan. Different landfill locations and features are not identical, and regulatory costs related to solid waste disposal may vary from county to county. Therefore, for each county to effectively offset its costs would require regulation adapted to its particular local conditions. Because of the need for localized regulation in this area and because local regulations imposing varied surcharges on garbage disposal would not otherwise interfere with the state's uniform scheme regulating

landfill location, development, and operation, we believe the instant surcharge is a permissible local regulation that is compatible with the Legislature's statutory scheme. *Llewellyn, supra* at 324-325. Thus, although the state has regulated extensively in the area of solid waste disposal, we conclude that the state's regulatory scheme does not preempt the instant surcharge. The instant surcharge is consistent with plaintiff's existing solid waste management plan and does not attempt to regulate landfill location or development; it is therefore valid under subsection 11538(8).

Defendants contend that this Court's opinions in *Fort Gratiot Charter Twp v Kettlewell*, 150 Mich App 648; 389 NW2d 468 (1986), *Weber v Twp of Orion Bldg Inspector*, 149 Mich App 660; 386 NW2d 635 (1986), and *Southeastern Oakland Co Incinerator, supra*, mandate that we find the instant surcharge preempted. All of these cases held that township ordinances regulating landfill operations were preempted by the act. *Fort Gratiot, supra* at 655; *Weber, supra* at 663; *Southeastern Oakland Co Incinerator, supra* at 46. We distinguish these cases on the basis that none of them specifically addressed a local surcharge on landfill disposal. The instant surcharge represents the primary source of plaintiff's revenue for enforcement of its solid waste plan. The surcharge is imposed on those who haul garbage to landfills, is to be collected by landfill operators like defendants, and is to be forwarded to the county. The surcharge does not affect landfill operations. To the extent that we can discern the subject matter of the local solid waste ordinances addressed in the cases cited by defendants, they all

affected landfill development or operation.[1] Therefore, defendants' reliance on these prior opinions is misplaced.

The trial court properly severed the surcharge provision from the preempted provisions of the ordinance. The trial court found most of the other provisions of the ordinance, which addressed various landfill operational requirements, invalid. However, § 422 of the ordinance contained a severability provision, reflecting plaintiff's desire that all valid provisions remain in effect in the event some provisions were stricken. The surcharge provision remains enforceable independently of the invalid portions of the ordinance, and we believe the surcharge provision remains reasonable in view of the ordinance as originally drafted. MCL 8.5; MSA 2.216; *Citizens for Logical Alternatives & Responsible Environment v Clare Co Bd of Comm'rs*, 211 Mich App 494, 498; 536 NW2d 286 (1995).

The trial court did not address defendants' subargument that the state should properly provide the funding for the county's solid waste management plan because plaintiff had its health department certified as an environmental quality enforcement agency. Nor did the trial court discuss defendants' contention that

---

[1] Exhibit five to defendants' lower court brief in reply to plaintiff's response to defendants' motion for summary disposition is a copy of the Avon Township landfill ordinance that this Court deemed preempted in *Southeastern Oakland Co Incinerator Authority, supra*. The Avon Township ordinance purported to regulate landfill permit and bond requirements, landfill performance standards and other operational regulations, landfill soil excavation, and landfill restoration, all areas in which the act and regulations promulgated thereunder currently regulate. The *Weber* Court also addressed "certain local ordinances preventing [plaintiffs] from operating a sanitary landfill." *Weber, supra* at 662. *Fort Gratiot, supra*, contains no description of the township ordinances there at issue.

MCL 324.11532(1); MSA 13A.11532(1), which authorizes municipalities to impose "an impact fee of not more than 10 cents per cubic yard on solid waste that is disposed of in a landfill," does not authorize counties to impose such a fee. However, regarding defendants' state-funding argument, MCL 324.11547(2); MSA 13A.11547(2) does not forbid the receipt of funds from other sources for the purpose of funding a county's solid waste management plan. Although § 11547 could conceivably provide a basis for an action by a city or county against the state in the event that the state failed to provide the funding described therein, it does not establish a private cause of action by individuals against a city or county that tries to make up a deficiency when the state fails to provide the described funding. Furthermore, regarding defendants' second subargument, although subsection 11532(1) of the act fails to mention counties while authorizing municipalities to impose a landfill impact fee, § 11532 merely constitutes a limitation on the amount of fees that a municipality may impose on landfill disposal. While § 11532 neglects to mention counties, subsection 11520(1), MCL 324.11520(1); MSA 13A.11520(1), contemplates that "[f]ees collected by a health officer [of a certified city, county, or district department of health—see subsection 11504(1)] under this part" may be used to implement a solid waste management plan.[2] We infer from the fact that

---

[2] Subsection 11520(1) refers to fees collected "under this part." Several sections of the act establish fees. For example, § 11509, MCL 324.11509; MSA 13A.11509, delineates various construction permit application fees, § 11512, MCL 324.11512; MSA 13A.11512, contains a list of landfill operating license application fees, and § 11525a, MCL 324.11525a; MSA 13A.11525a, imposes on landfill owners and operators a solid waste program administration fee. However, none of these fees are receivable by a

the act contains no explicit limitation on county-imposed landfill disposal fees and the fact that the act contemplates that counties will collect fees under the act, that counties may impose such fees.

IV

Fourth, defendants argue that the surcharge is invalid because plaintiff possessed no authority to impose it. As a political subdivision of the state, plaintiff county possesses only those powers delegated to it by constitution or statute. *Mudge v Macomb Co*, 210 Mich App 436, 442; 534 NW2d 539 (1995), rev'd in part on other grounds 458 Mich 87; 580 NW2d 845 (1998). We conclude that plaintiff possessed statutorily granted authority to promulgate the instant surcharge ordinance.

MCL 46.11;  MSA 5.331 invests a county board of commissioners with a list of powers, including the power to,

> [b]y majority vote of the members of the county board of commissioners elected and serving, *pass ordinances that relate to county affairs and do not contravene the general laws of this state or interfere with the local affairs of a*

city or county health officer. Subsection 11509(7) mandates that the department of environmental quality (the department) deposit the construction permit application fees in the state's solid waste management fund (created pursuant to § 11550, MCL 324.11550;  MSA 13A.11550), subsection 11512(11), MCL 324.11512(11);  MSA 13A.11512(11), also orders the department to deposit the operating license application fees into the solid waste management fund, and subsection 11525a(5) directs that solid waste administration fees also be deposited in the solid waste management fund. The only other fees explicitly discussed within the act are municipal impact fees in § 11532, MCL 324.11532;  MSA 13A.11532. Because none of the fees specifically authorized by the act represent fees that a county could collect as fees "under this part," we conclude that § 11520 must contemplate that counties may impose various solid waste fees of their own, such as the instant surcharge.

> *township, city, or village* within the limits of the county,
> and . . . provide suitable sanctions for the violation of those
> ordinances. [MCL 46.11(m);   MSA 5.331(m)   (emphasis
> added).]

The county's statutorily granted authority should be liberally construed in plaintiff's favor and includes those powers "fairly implied and not prohibited by th[e] constitution." Const 1963, art 7, § 34. We again review de novo this issue of statutory interpretation. *Oakland Co Bd of Co Rd Comm'rs, supra.*

Construing MCL 46.11(m);  MSA 5.331(m)  liberally, we conclude that plaintiff possessed authority to enact the landfill surcharge. The surcharge was intended to fund the enforcement of the county's solid waste management plan, and therefore, it related to county affairs. Defendants do not allege that the surcharge in any way interfered with the local affairs of a city, township, or village. Therefore, we conclude that MCL 46.11(m);  MSA 5.331(m)  constituted at least one basis for plaintiff's passage of the surcharge ordinance.

Furthermore, we believe plaintiff possessed authority to pass the surcharge ordinance under the solid waste management act. As we previously mentioned, subsection 11538(8) of the act, MCL 324.11538(8); MSA 13A.11538(8),  declares that, after approval of a countywide solid waste management plan by the Department of Environmental Quality, only a county ordinance that affects landfill location or development and is not part of or is inconsistent with the county's approved plan is prohibited. Because the surcharge does not fall into the category of ordinances explicitly prohibited by subsection 11538(8), it is valid. The surcharge also comports with the most

recent, state-approved update to plaintiff's solid waste management plan. The update requires that the county board of commissioners establish an enforcement agency to carry out the plan and provides for enforcement agency funding "by surcharges, tipping fees and/or other appropriate means of financing."

Finally, subsection 11520(1) provides that "[f]ees collected by a health officer [defined within § 11504 of the act, MCL 324.11504; MSA 13A.11504, as a certified city or county health department's administrative officer] under this part shall be deposited with the city or county treasurer, who shall keep the deposits in a special fund designated for use in implementing this part." Plaintiff's health department is a certified health department that may collect fees to implement its solid waste management plan. As we discussed above, we believe that subsection 11520(1) contemplates that such certified cities and counties may impose solid waste disposal fees.

v

Fifth, defendants claim that amended § 280 violates the Equal Protection Clauses of the United States and Michigan Constitutions, US Const, Am XIV; Const 1963, art 1, § 2. Defendants argue that the ordinance creates a classification of persons who utilize landfills and improperly imposes the costs of the county's solid waste program on them, when the program benefits all the county's residents. Defendants also contend that the surcharge is not applied equally because only Type II landfill users must pay the fee. We review these constitutional issues de novo. *Wayne Co Chief Executive v Governor*, 230 Mich App 258, 263; 583 NW2d 512 (1998).

Where the proponent of an equal protection argument is not a member of a protected class, or does not allege violation of a fundamental right, we review the equal protection claim using a rational basis test. *Yaldo v North Pointe Ins Co*, 457 Mich 341, 349; 578 NW2d 274 (1998). Under the rational basis test, we will uphold the challenged statute or ordinance if it furthers a legitimate governmental interest and if the classification is rationally related to achieving the interest. *Id.*

Defendants' equal protection arguments lack merit. The county imposed the surcharge to fund the enforcement of its solid waste management plan, a legitimate, state-approved interest. Regarding defendants' argument that the surcharge improperly applies only to landfill users, it was certainly reasonable for the county to impose the surcharge on only those people who deposited their waste in county landfills, thus increasing the county's solid waste management burden. Regarding defendants' argument that the surcharge improperly applies only to Type II and not to Type III landfills, these two types of landfills are labeled and classified differently because each type is authorized to collect different types of wastes. Type II landfills potentially receive "household waste, municipal solid waste incinerator ash" and "commercial waste, nonhazardous sludge, conditionally exempt small quantity generator waste, and industrial waste," 1993 AACS, R 299.4104(d). Type III landfills include construction and demolition waste landfills or industrial waste landfills, but are not hazardous waste landfills. 1993 AACS, R 299.4105(a)(ii). The mere fact that these different types of landfills receive different types of waste would constitute a rational basis for

imposing a fee on disposal in one type and not in the other. Although the record is unclear what specific rationale led plaintiff to impose disposal fees on waste entering only Type II landfills, testimony indicated that all Type III landfills in Saginaw County are privately owned facilities, in which their owners dispose of their own industrial wastes. Perhaps these privately owned Type III landfills also generate less waste volume than the Type II landfills open to the general public. In any event, the Legislature has also seen fit to distinguish between Type II and Type III landfills, imposing larger construction permit application fees for Type II landfills (see MCL 324.11509[2], [3]; MSA 13A11509[2], [3]), and requiring larger operating license application fees for all Type II landfills receiving more than five hundred tons of waste a day rather than the flat operating license application fee paid by Type III landfills (see MCL 324.11512[7]-[9]; MSA 13A.11512[7]-[9]). Therefore, we conclude that the fact that the two types of landfills contain different types of waste constitutes a rational basis for imposing a fee on disposal in one type while imposing no fee for disposal in the other.

VI

Lastly, defendants contend that plaintiff's ordinance contains penalty provisions for its violation beyond those that the Legislature has authorized a county to impose and therefore these penalty provisions are preempted. We note that although defendants failed to preserve this argument by raising it before the trial court, we may address it for the first time on appeal because it involves only a question of law. *Miller v Inglis*, 223 Mich App 159, 168; 567 NW2d 253 (1997).

We agree with defendants that the penalty provisions of the ordinance are invalid and unenforceable. MCL 46.10b(1);  MSA 5.330(2)(1)  limits the penalties imposed on one who violates an ordinance to "a fine of not more than $500.00 or imprisonment for not more than 90 days, or both." Subsection 333.1, apparently mislabeled within the ordinance as subsection 332.1, provides for civil penalties of from $1000 to $3000, and subsection 334.1 authorizes fines of up to $10,000 a day for "major violations" of the ordinance. These ordinance penalties clearly exceed those authorized by the Legislature and are therefore preempted and unenforceable.[3] *Llewellyn, supra* at 322. However, the mere fact that the ordinance authorizes the imposition of a greater penalty than does the statute does not invalidate the ordinance. *Kalita v Detroit,* 57 Mich App 696, 705; 226 NW2d 699 (1975). Therefore, the surcharge provision remains enforceable.

Affirmed.

---

[3] We reject plaintiff's contention that the penalty provisions of the ordinance are consistent with MCL 324.11546;  MSA 13A.11546  and therefore are valid. Subsection 11546(2) authorizes fines of up to $10,000 a day for violation of "any provision of this part or rules promulgated under this part" or for failure "to comply with any permit, license, or final order issued pursuant to this part." Plaintiff's ordinance constitutes neither a rule promulgated under this part, nor a permit, license, or final order issued pursuant to the act. Therefore, § 46 cannot be construed to permit plaintiff's ordinance to impose penalties beyond those authorized by MCL 46.10b(1);  MSA 5.330(2)(1).